UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHARLES "CHED" MACQUIGG,          )
                                  )
    Plaintiff,                    )
                                  )
v.                                )          No.
                                  )
The ALBUQUERQUE PUBLIC            )          JURY DEMAND REQUESTED
SCHOOLS BOARD OF EDUCATION,        )
MARTIN ESQUIVEL, in his individual )
capacity, DAVID ROBBINS, in his    )
individual capacity, WINSTON       )
BROOKS, in his individual capacity, )
STEVE TELLEZ, in his individual    )
capacity, MONICA ARMENTA, in her   )
individual capacity, RIGO CHAVEZ,  )
Records Custodian.                 )
                                  )
    Defendants.                   )
                                  )
_____ )

## VERIFIED COMPLAINT FOR VIOLATIONS OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND TO ENFORCE THE NEW MEXICO INSPECTION OF PUBLIC RECORDS ACT

Plaintiff Charles "Ched" MacQuigg, through his attorneys, Freedman Boyd Hollander

Goldberg Urias & Ward, P.A. (John W. Boyd and Vincent J. Ward), brings this complaint for

violation of his civil rights under the First and Fourteenth Amendments to the United States

Constitution and 42 U.S.C. § 1983, and to enforce certain provisions of the New Mexico

Inspection of Public Records Act, NMSA 1978, §§ 14-2-1 *et seq.*

1

## I.    GENERAL NATURE OF THE ALLEGATIONS

*Background related to the First Amendment Claims*

1.      This case arises from Defendants' exclusion of Plaintiff from the public meetings of the Albuquerque Public Schools Board of Education (the "APS Board" or the "Board") in violation of Mr. MacQuigg's First and Fourteenth Amendment rights.

2.      Plaintiff, Charles "Ched" MacQuigg, is a life-long resident of Albuquerque, New Mexico, and a retired Albuquerque Public Schools ("APS") teacher.  Since retiring in 2004, Mr. MacQuigg has become a vocal advocate for reform and change within the APS system.

3.      APS is the largest public school district in New Mexico. The APS Board is the governing body of APS.  By law and policy, the public meetings of the APS Board are open to the public and include time for public comment.  Accordingly, The Board's public meetings are designated public forums under the First Amendment.

4.      Since retiring in 2004, Mr. MacQuigg has frequently attended and participated in the public meetings of the APS Board. Mr. MacQuigg attends the Board's public meetings to gather information and to express his views about APS.

5.      Mr. MacQuigg also operates an internet news-blog called *Diogenes Six',* through which he writes original news stories and provides commentary about the affairs of APS.

6.       Mr. MacQuigg's outspoken nature and unrelenting scrutiny has angered the Defendants.  As a result, Defendants have taken various steps, described herein, to silence Mr. MacQuigg by restricting his access to the Board's public meetings and by limiting Mr. MacQuigg's ability to review public records and other information maintained by APS.

7.      The actions giving rise to this complaint have occurred since November 4, 2009, and are as follows: (a) on November 4, 2009, Defendant Martin Esquivel, the then president of

the APS Board, ejected Plaintiff from a regular meeting of the APS Board because Plaintiff mentioned the names of individual Board members and APS employees while making comments to the Board; (b) on August 19, 2010, Defendant Monica Armenta refused to grant Plaintiff press credentials to cover a gubernatorial debate held at an APS high school out of retaliation for the views expressed by Plaintiff at Board meetings and on his blog; (c) on August 19, 2010, Defendant Winston Brooks refused Mr. MacQuigg's request to attend the same gubernatorial debate, despite the fact that Plaintiff had a valid ticket to enter the event, out of retaliation for the views expressed by Plaintiff at Board meetings and on his blog; (d) on August 25, 2009, Defendant David Robbins ejected Plaintiff from an Audit Committee meeting of the APS Board out of retaliation for the views expressed by Plaintiff at Board meetings and on his blog; and (e) on September 1, 2010, Defendants Martin Esquivel and Steve Tellez banned Plaintiff indefinitely from attending all future meetings of the APS Board, thereby restraining Plaintiff from expressing his constitutionally protected views regarding APS at future Board meetings.

8.      Plaintiff brings this action to enjoin the ban and to seek damages and other relief for the violation of Mr. MacQuigg's First and Fourteenth Amendment rights by Defendants stemming from the incidents described above.

*Background related to the Inspection of Public Records Act Claims*

9.      In addition to the allegations related to the violation of Mr. MacQuigg's First and Fourteenth Amendment rights, Mr. MacQuigg brings this action to enforce the provisions of the New Mexico Inspection of Public Records Act, NMSA 1978 §§ 14-2-1, et seq. ("IPRA").

10. IPRA provides that, with only certain, specified limitations, "[e]very person has a right to inspect public records of the state." *Id.* at § 14-2-1A.

3

11.     IPRA reflects the New Mexico Legislature's recognition "that a representative government is dependent upon an informed electorate" and embodies the Legislature's intention that "that all persons are entitled to the greatest possible information regarding the affairs of the government and the official acts of public officers and employees." *Id*. at § 14-2-5.

12.     On December 2, 2009, Mr. MacQuigg submitted a written request to APS, through its records custodian, Defendant Rigo Chavez, requesting the inspection of certain public documents related to investigations involving a former APS police chief named Gil Lovato.  *See* Ex. A.

13.     To date, almost three years after receiving Plaintiff's IPRA request, Defendants have not provided all of the public documents in its possession that are responsive to Mr. MacQuigg's request.

14.     Having tried unsuccessfully for almost three years to convince Defendants to allow him to inspect the public records as required by the IPRA, Mr. MacQuigg now requests that this Court order Defendants to produce all of the documents responsive to Mr. MacQuigg's request, in unredacted form, and award Mr. MacQuigg statutory damages and the attorney fees and costs reasonably incurred in bringing this action to enforce the IPRA.

## II.     JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. § 1343, with pendent jurisdiction over the state law claims.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, as Defendants are all residents of New Mexico and all the acts complained of occurred in New Mexico.

### III.   PARTIES

17.     Plaintiff Ched MacQuigg is a resident of Albuquerque, Bernalillo County, New Mexico.

18.     By statute, NMSA § 22-5-4, the Defendant Albuquerque Public Schools Board of Education is the public body responsible for the supervision and control of the APS school district.  As such, it is the proper institutional Defendant in this case.

19.     Defendant Martin Esquivel was at all material times the President of the APS Board, and is sued in his individual capacity.

20.     Defendant David Robbins is a member of the APS Board, and is sued in his individual capacity.

21.     Defendant Winston Brooks is the Superintendent of the APS District, and is sued in his individual capacity.

22.     Defendant Steve Tellez is the Chief of Police of the APS Police Department, and is sued in his individual capacity.

23.     Defendant Monica Armenta is the Executive Director of Communications of the APS District, and is sued in her individual capacity.

24.     Defendant Rigo Chavez is the Records Custodian of the APS District, and is sued in his official capacity.

25.  At all material times and in all material respects, Defendants' conduct was under color of state law, statute or authority.

## IV.    FACTUAL STATEMENT

*The First Amendment Violations*

26.      APS is the largest public school system in New Mexico, educating almost 90,000

students in Albuquerque, Rio Rancho, Corrales, Los Ranchos de Albuquerque, Tijeras, San

Antonio, Edgewood, Laguna and Isleta Pueblos, Chilili, Tohajiilee, and the Atrisco Land Grant.

About 15,000 employees work for APS as well, making it the second largest employer in the

Albuquerque metro area.

27.      The APS Board consists of seven separately elected members.  The members of

the Board are responsible for the management and oversight of APS.

28.      By law, the APS Board holds regular, special and committee meetings that are

open to the public.  This requirement is set out in the New Mexico Open Meetings Act, NMSA

1978, § 10-15-1 *et seq.* (declaring that "[a]ll meetings of any public body except the legislature

and the courts shall be public meetings, and all persons so desiring shall be permitted to attend

and listen to the deliberations and proceedings."), and in Board Policy, BE – Board of Education

Meetings (declaring that "[a]ll meetings of the [APS] Board of Education shall comply with the

Open Meetings Act.").  The APS Board also permits "members of the public to comment

regarding their concerns, complaints, or commendations" at regular meetings of the APS Board

and, under certain circumstances, at special or committee meetings of the APS Board.

29.      The Plaintiff in this lawsuit is Mr. Charles "Ched" MacQuigg.  Mr. MacQuigg

was born and raised in Albuquerque and attended APS schools for most of his childhood.  He

taught at APS for 25 years before retiring in 2004.

30.      While teaching at APS, Mr. MacQuigg developed a deep-seated passion for a

values-based educational curriculum known as "Character Counts."  APS adopted "Character

6

Counts" to varying degrees toward the latter part of Mr. MacQuigg's teaching career.  Mr. MacQuigg received specialized training in the program and sought to incorporate it into his everyday teachings.  The curriculum is centered on basic values called the "Six Pillars of Character," which are trustworthiness, respect, responsibility, fairness, caring and citizenship.

31.     Although APS eventually phased out the program, Mr. MacQuigg, upon his retirement, became impassioned about promoting the tenets of the curriculum at the Board and executive levels of APS.  Mr. MacQuigg believed that the APS Board and senior level staff would benefit from the adoption of a values-based approach to governing.

32.     Mr. MacQuigg began attending and participating in the public meetings of the APS Board shortly after his retirement in 2004.  Initially Mr. MacQuigg concentrated his time by advocating for the adoption of a values-based governance strategy.  As time passed, Mr. MacQuigg acquired an interest in other aspects of APS business, including the budgeting process, personnel and law enforcement issues, and the administration of APS's whistleblower programs.

33.     In August 2006, Mr. MacQuigg established an internet blog called *Diogenes' Six*. This news-oriented blog contains content written exclusively by Mr. MacQuigg.  Mr. MacQuigg's dealings with the APS Board inspired him to start the blog.  His first-ever blog posting, written on August 15, 2006, describes his motivation for establishing *Diogenes' Six*.

> "The Albuquerque Public Schools Board of Education has refused to be held
> accountable to the same ethical standard of conduct as they impose upon students.
> They sat in silence rather than answer the question. As role models, their position
> is categorically indefensible. As stewards of a half a billion tax dollars, their
> position is categorically indefensible. Clearly they have an obligation to hold

7

themselves accountable to a higher standard; their position is indefensible. Yet

powerful people are able to defend indefensible positions simply by ensuring that

they never actually have to defend them. ☐☐The board ignores me when I ask the

question. They ignore me even in diametric opposition to their ethical expectation

for children. The (sic) can ignore me because they are powerful and I am not.

Certainly I am not powerful by myself. The only hope seems to lie in the last

refuge of stakeholders betrayed; large crowds on street corners. I don't know

where the tipping point is, but I do know that if enough people show up (sic) a

public forum, sooner or later they will have to answer the question. Sooner or later

the people who enjoy our trust will respond by holding themselves accountable to

a higher standard of conduct; at least the same standard of conduct that applies to

children."

34.     Between August 2006 and September 2010, Mr. MacQuigg wrote over 4,200 blog

entries, the vast majority pertaining to APS.  The postings are sharp, pointed and critical, and are

often directed at the Defendants in this case. For example, on May 7, 2009, Mr. MacQuigg wrote

the following about Defendant Esquivel.

"Marty Esquivel was given the power to run APS school board meetings.  He used

that power to prevent my exercise of my constitutionally protected human rights to

free speech, and to petition my government.  He used his power to keep me from

addressing anything that APS Executive Director of Communications, Monica

Armenta had said during her presentation to the board and to the public.  He used

his power to keep me from pointing directly to deliberately misleading statements

that were fresh in the minds of the audience.  Marty Esquivel abused the power

that has been entrusted to him.  Marty Esquivel used the power entrusted to him to

create or leave the impression that the leadership of the APS is being honest with

stakeholders, that the leadership of the APS is telling the truth to stakeholders. Marty Esquivel used the power entrusted to him to evade accountability to any standard of conduct that '... precludes all acts, including half-truths, out-of-context statements, and even silence, that are intended to create beliefs or leave impressions that are untrue or misleading.' -APS Student Standards of Conduct- Marty Esquivel had his character tested. He came up short."

35.     The individual Defendants in this case are familiar with Mr. MacQuigg's blog and, upon information and belief, are known to read Mr. MacQuigg's articles.

36.     Prior to the ban, Mr. MacQuigg frequently attended the public meetings of the APS Board, which, as previously established, are public forums under the United States Constitution.

37.     Mr. MacQuigg attended the APS Board meetings both for personal reasons and because of activities related to his blog. The meetings enabled Mr. MacQuigg to gather important public information, and offered a forum in which to express his concerns, opinions and ideas for reforming APS.

38.     Mr. MacQuigg's speech, which the Constitution protects, has angered and frustrated the APS establishment, including the Defendants.

39.     As a result of Mr. MacQuigg's views, as expressed on his blog and at Board meetings, the Defendants have sought to restrict Mr. MacQuigg's right to attend and participate in the Board's public meetings.

40.     These acts are reflected in a series of incidents that have transpired since November 4, 2009.

*The November 4, 2009, Regular APS Board Meeting*

41.    The first of these violations occurred on or about November 4, 2009, at a regular public meeting of the APS Board.

42.    On November 4, 2009, the APS Board held a regular meeting as it is required to do on at least a monthly basis in accordance with its policies.  As was customary, Mr. MacQuigg attended the meeting and made arrangements to speak to the Board during the allotted public comment period.  The Board refers to this period as a "Public Forum" on its agenda.  *See* Ex. B.

43.    According to Board policy, to address the Board, an individual must first sign an "Individual's Request to Speak" card.  He or she is then allotted two minutes to "be heard regarding their concerns, complaints, or commendations."

44.    Mr. MacQuigg complied with the Board's requirements by filling out and turning in the required "card." He then waited for his turn to speak. Mr. MacQuigg understood clearly that he would have no more than two minutes to speak.

45.    When Mr. MacQuigg's turn to speak came, he began his comments by discussing what he called the "Pillars of Trustworthiness."  His speech reflected the tenets of Character Counts, a program APS had once followed.  Seconds into Mr. MacQuigg's speech, a member of the Board, Robert Lucero, admonished Mr. MacQuigg for directing his comments to individual board members rather than to the board as a whole.  Shortly thereafter, the Board president, Defendant Esquivel, intervened, directed Mr. MacQuigg to stop speaking, and required him to leave the public meeting.  The order came well before Mr. MacQuigg's two minute time limit had expired.

46.     Defendant Esquivel's decision to interrupt Mr. MacQuigg's speech and eject him from the meeting was made solely because of the *content* of Mr. MacQuigg's comments to the Board.

47.     As a matter of practice, APS videotapes the Board's regular meetings.  The interaction between Mr. MacQuigg, Defendant Esquivel, and other members of the Board, occurred as follows.

> "**Mr. MacQuigg:**  I have come tonight with individual opportunities to stand up as role models of the Pillar of Trustworthiness.  David Robbins, you can tell the truth about hundreds of whistle blower complaints that are being denied due process in front of the Audit Committee.  Paula Maes, you can tell the truth …(interrupted).
>
> **Member Robert Lucero:**  Mr. Chairman, I would motion that addressing board members – we will talk about issues, but addressing board members is inappropriate for public forums, so I would ask that either be refrained or the public forum stopped.
>
> **President Martin Esquivel:**  (Inaudible)… move on.
>
> **Mr. MacQuigg:**  You will tell the truth about your resistance to any audit that will individually identify corrupt and incompetent administrators.  Marty Esquivel, you will tell the truth about the need for an independent ….
>
> **Member Dolores Griego:**  Mr. MacQuigg …
>
> **Mr. MacQuigg:**  … administrative standards and accountability audit.
>
> **Member Dolores Griego:**  Mr. MacQuigg, if you would refrain from addressing us individually and address us just as a board …

11

**Mr. MacQuigg:** (turning to face APS Supt Winston Brooks) You sir, will tell the truth about evidence of felony criminal misconduct involving senior APS administrators which has still not been surrendered to the District Attorney's Office (Turning to face APS Chief Operating Officer  Brad Winter). You sir, can tell the truth about spending at 6400 Uptown Blvd; candidly, forthrightly and honestly.  Ms. Sink can tell the truth about …

**Member Robert Lucero:** … Mr. Chairman, we've just crossed the line.

**President Martin Esquivel:**  It's very clear that we've made it -- we've told you not to address personnel issues.  If you want to continue this you can leave.

**Mr. MacQuigg:** I haven't addressed a personnel issue.

**President Martin Esquivel:**  You can leave.

**Mr. MacQuigg:**  (inaudible)

**President Martin Esquivel:**  You can leave. You're done.  You are done. You are done.  You are done.

**Mr. MacQuigg:**  Are you ordering him (surrounded by police) to arrest me – again?

**President Martin Esquivel:**  I'm asking you to leave voluntarily.

**Mr. MacQuigg:**  You're arresting me.  You're depriving me of my two minutes.

**President Martin Esquivel:** Goodbye.

**Member Robert Lucero:**  Thank you Mr. Chairman.

**Dolores Griego:**  Thank you Mr. MacQuigg."

48.     Defendant Esquivel issued the order to stop Mr. MacQuigg's speech and to eject him from the Board meeting because of the content of Mr. MacQuigg's speech.

49.    Defendant Esquivel had no substantial or compelling governmental interest in prohibiting Mr. MacQuigg from speaking or removing him from the public meeting.

*The August 19, 2010, Gubernatorial Debate at El Dorado High School*

50.    The second violation occurred on August 19, 2010, at a gubernatorial debate between Governor Susana Martinez and then Lieutenant Governor Diane Denish. The debate took place at Eldorado High School, an APS school. The topic of the debate was education.

51.    APS officials arranged and organized the debate since it was held on APS property. Two of the individual defendants, Winston Brooks and Monica Armenta, controlled various aspects of the debate, including access to the event by the press and the public.

52.    Mr. MacQuigg sought to attend the debate because of its focus on education and because the debate was to be held at an APS school. He intended to cover the debate as a member of the press for his blog.

53.    To cover news-worthy public events on APS property, APS requires press organizations to request and obtain "press credentials" through the APS communications office. The APS communications office is headed by Defendant Monica Armenta, the Executive Director of Communications for APS.

54.    Upon information and belief, the APS press office has no written policies to guide how, when or why it issues "press credentials" or under what circumstances a request for "press credentials" may be denied.

55.    Because the topic of the debate interested Mr. MacQuigg, and because Mr. MacQuigg wished to report about the debate on his blog, he requested "press credentials" from the APS communications office prior to the date of the debate.

56.    Shortly after Mr. MacQuigg made the request, Defendant Armenta denied Mr. MacQuigg's request for "press credentials."  This denial prevented Mr. MacQuigg from covering and reporting about the debate on his blog.

57.    Defendant Armenta's decision to deny Mr. MacQuigg's request for "press credentials" was arbitrary and capricious, and taken as retaliation against Mr. MacQuigg for views he has expressed on his blog and at the public meetings of the APS Board regarding the Defendants.

58.    After he was denied "press credentials," Mr. MacQuigg obtained a general admission ticket to enter the debate from former New Mexico State Representative, Janice Arnold-Jones.

59.    On the day of the debate, Mr. MacQuigg sought to enter the debate using the ticket given to him by Representative Arnold-Jones.

60.    Upon presenting his ticket, APS police informed Mr. MacQuigg that Defendant Winston Brooks had ordered them to restrict him from entering the debate and to remove him from APS property.

61.    The exchange between Mr. MacQuigg and APS police was recorded, and is reflected, in part, as follows.

> **"APS Officer Rohlfs**:  Per Superintendent Brooks, you will not be allowed into this function.
>
> **Mr. MacQuigg**:  And why is that?
>
> **APS Office Rohlfs**:  Regardless, regardless whether you have a ticket or not.
>
> **Mr. MacQuigg**:  And why is that?

> **APS Officer Rohlfs**:  Simple.
>
> **Mr. MacQuigg**:  Well you're violating my civil rights. Does that bother you at all?
>
> **APS Officer Rohlfs**:  No, I'm not violating anybody's civil rights.
>
> **Mr. MacQuigg**:  Oh yes you are.
>
> **APS Officer Rohlfs**: OK, well plain and simple sir, you're going to have to leave the property as well.  He doesn't want you on APS property.
>
> **Mr. MacQuigg**:  Oh really, and you're pretty sure this came from the Superintendent.  There's no doubt about it?
>
> **APS Officer Rohlfs**:  I'm absolutely positive.  No doubt about it."

62.     Defendant Brooks' denial of Mr. MacQuigg's request to enter the debate was arbitrary, capricious, and unreasonable under the circumstances.  He had no reason to deny Mr. MacQuigg entry to the debate.

63.     Defendant Brooks prohibited Mr. MacQuigg from attending the debate out of retaliation for views express by Mr. MacQuigg on his blog and at the public meetings of the APS Board regarding APS.

*The August 25, 2010, Audit Committee Meeting*

64.     The next violation occurred on August 25, 2010, at a regularly scheduled meeting of the APS Board Audit Committee (the agenda for this meeting is attached as Ex. C to this complaint).  The Audit Committee is responsible for, among other things, overseeing APS's annual financial audit and its whistleblower program, Silent Whistle.

65.     The Audit Committee is a committee of the whole, which means that the entire Board sits on the committee along with two at large members and two ex-officio members.  At the time of the violation, Defendant David Robbins chaired the Audit Committee.

15

66.     Audit Committee meetings are open to the public.  Members of the public may make comments to the Committee at the discretion of the chair.

67.     Mr. MacQuigg attended the August 25, 2010, Audit Committee meeting, as was his ordinary practice, because he was personally interested in the topics to be discussed and because he wished to gather information for his blog.

68.     The Audit Committee began its meeting in an open session.  After conducting regular business in open session the Committee adjourned the open session of the meeting and convened an executive session.

69.     An executive session is closed to the public and is reserved for limited agenda topics like personnel and litigation issues.

70.     Mr. MacQuigg did not participate in the executive session of the Audit Committee.

71.     After concluding the executive session, the Audit Committee reconvened the open session of the public meeting.  The public was – as at the beginning of the meeting – allowed to reenter the open session of the public meeting.  Mr. MacQuigg returned to the meeting room as did others in attendance.

72.     After reentering the public meeting, Defendant David Robbins promptly ejected Mr. MacQuigg from the public meeting on the alleged basis that Mr. MacQuigg had, along with others, secretly recorded the executive session of the Audit Committee with a video camera.

73.     Defendant Robbins' decision to remove Mr. MacQuigg was improper because Mr. MacQuigg did not, in fact, possess a recording camera, nor did he direct, assist or otherwise take part in any other public member's attempt to record the executive session of the Audit

Committee meeting. Nor would it have been improper even if Mr. MacQuigg had had a camera or recording device.

74.     Mr. MacQuigg clearly explained to Defendant Robbins that he did not possess a recording device and that he had not directed, assisted or otherwise taken part in any other public member's attempt to record the executive session of the Audit Committee meeting.

75.     Defendant Robbins disregarded Mr. MacQuigg's account and ejected him from the meeting nonetheless. The exchange between Defendant Robbins and Mr. MacQuigg was recorded and is reflected as follows.

> **"Chair, David Robbins:**  Now, before we take a vote I'm going to ask those individuals that were in here with the recording devices in here earlier to leave 'cause you violated my instructions to turn off your recording devices at the time I told you to so I'm asking you to take all of your equipment out of this room at this point in time.  You are being expelled.
>
> **Mr. Ched MacQuigg:**  I didn't have any recording equipment.
>
> **Chair, David Robbins:**  This gentleman here had a camera, he had it on, that bag perhaps has some instrument, all the equipment has to be taken out of this room.
>
> **Mr. Ched MacQuigg:**  I don't know why you're telling me, it's not my equipment.
>
> **Chair, David Robbins:**  Do you know this gentleman?
>
> **Mr. Ched MacQuigg:**  What do you mean do I know him?  What difference does it make?
>
> **Chair, David Robbins:**  You are here as a group and I want you to leave or I will ask our police officers to remove you.

17

**Mr. Ched MacQuigg:** I haven't done anything wrong.

**Chair, David Robbins:** As the group a recording device was left on during the time I had instructed that all recording devices had to be turned off.

**Mr. Ched MacQuigg:** I never had a recording device on, I haven't had a recording device, you have no---

**Chair, David Robbins:** --you were with--

**Mr. Ched MacQuigg:** --reason to expel me.

**Chair, David Robbins:** --you are with a group that had a recording device--

**Mr. Ched MacQuigg:** So what? I didn't do anything wrong.

**Chair, David Robbins:** --I'm expelling the group.

**Mr. Ched MacQuigg:** I haven't done anything wrong.

**Chair, David Robbins:** Sir, please remove them.

**Mr. Ched MacQuigg:** Are you ordering them to arrest me?

**Chair, David Robbins:** I am asking, I am ordering, or asking them, to remove you because of your refusal and because you violated the instruction in State statute to turn off recording devices.

**Mr. Ched MacQuigg:** I didn't have any recording devices, what part of that do you not get?

**Mr. Mark Bralley:** I'm going to speak to the matter of that--the Open Meetings Act allows you to go into executive session (inaudible) you were not in an executive session of the kind that I have (inaudible) the meeting. The reason I left the recorder on is Mr. Lucero was making commentary about throwing Mr. MacQuigg and myself out of this session and made the suggestion that we not be allowed to return. Now, I would ask you to consult with Mr. Melendres here about

18

the requirements of the Open Meetings Act, specifically that an Open Meeting requires the reasonable accommodation of audio and video equipment and that you are attempting to make the ability (inaudible) to observe a public meeting less than reasonable by trying to move us out of a place that, I mean I have not previously.

**Unidentified Male Voice:**  This is ridiculous (said in a low tone).

**Unidentified Female Voice:**  Mr.Chairman, you know what the, this has been a --

**Chair, David Robbins:**  We've discussed this, you, you violated the instructions that I gave, I don't really care if you believe we weren't in closed session at the time I told the recorder to be turned off.  We went into closed session at that point in time.

**Mr. Mark Bralley:**  Well, not everyone who was required to be out of the room had left the room at that moment (still talking but not audible).

**Chair, David Robbins:**  I instructed that all recording devices were to be shut off so please leave right now.

**Mr. Mark Bralley:**  I am going to suggest that you also, under the state law, do not have the authority to remove somebody from a public meeting, that, that power belongs to somebody else and it's not the police officers.

**Chair, David Robbins:**  Both of you get out of here now! Out!  Officers, please remove the individuals---

**Unidentified Male Voice:**  It's a disruption of this meeting--

**Chair, David Robbins:**  --and if they refuse to leave then arrest them. Any equipment left behind will be considered abandoned and will be turned over to APD for review.  I don't want any equipment left in here.

19

76.     After defendant Robbins ejected Mr. MacQuigg from the meeting, but before the Audit Committee adjourned, Mr. Robbins made the following statement on the record.

> **Chair, David Robbins:**  Before I adjourn the meeting, this can go on the record, I was informed right after the last, well after the Governor's debate, that Mr. MacQuigg has been making statements derogatory and has implied that he's never done anything wrong.  And I also have information that he has made implied threats and for that reason alone I feel justified in removing these individuals because I consider them to be hostile and although that in and of itself does not allow us to remove someone when they have made threats against personnel of APS, I consider that against all of the staff and against this Board.  So, that can be on the record.  I'll adjourn the meeting."

77.     Defendant Robbins ejected Mr. MacQuigg from the Audit Committee meeting out of retaliation for comments made by Mr. MacQuigg on his blog and at prior public meetings of the APS Board.

78.     Moreover, Defendant Robbins did not have a substantial or compelling reason to eject Mr. MacQuigg from the August 25, 2010, Audit Committee meeting because Mr. MacQuigg had done nothing wrong.

*The September 1, 2010, Banning Order*

79.     Approximately a week after the August 25, 2010, Audit Committee meeting, Mr. MacQuigg received written notice from Defendants Esquivel and Tellez, the then Board president and deputy chief of police of APS respectively, informing him that he had been indefinitely banned from attending all future meetings of the APS Board because of "concerns for the safety of not only the board members but of APS employees" Ex. D.

20

80.     Defendants Esquivel and Tellez signed the letter in their capacity as the Board president and deputy chief of APS police respectively.

81.     The banning letter does not identify a single threat or violent act taken by Mr. MacQuigg against an APS Board member or APS employee.

82.     Nor does the banning letter identify a single arrest or investigation related to any threat or violent act taken by Mr. MacQuigg against an APS Board member or APS employee.

83.     In fact, Mr. MacQuigg did not threaten to harm, and certainly did not commit a violent act, against any APS Board members or APS employees prior to the issuance of the banning letter.  Nor has he since.

84.     According to the banning letter, Mr. MacQuigg's constitutional right to attend the public meetings of the APS Board will be restored only if Defendants "determine" that Mr. MacQuigg "is sincere in adhering to the [Board's] rules of decorum."

85.     The banning letter itself suggests that the ban is related to unidentified decorum issues rather than safety concerns.

86.     The banning letter also states that "[i]f, however, [Mr. MacQuigg] causes[s] any disruption or disturbance of public meetings, [he] will be permanently banned from attending meetings and having access to the APS administration building and facilities in general."

87.     The power to reinstate Mr. MacQuigg's right to attend the public meetings of the APS Board rests solely with the Board.

88.     The ban is unlimited in time or scope, and will remain in effect until Defendants determine that retracting the ban is appropriate.

89.     Defendants have not retracted the ban since its issuance.  As a consequence, Mr. MacQuigg has not attended a single public meeting of the APS Board in over two years, or since Defendants Esquivel and Tellez issued the banning letter.

90.     The ban has restrained Mr. MacQuigg's ability to attend and speak at all APS Board meetings since its issuance.

91.     Defendants Esquivel and Tellez issued the ban despite not having a substantial or compelling reason for doing so. Their ban, in fact, was arbitrary and capricious and without any basis that would survive First Amendment scrutiny.

*The Request for Records under the New Mexico Inspection of Public Records Act, NMSA 1978, § 14-2-1 et seq.*

92.     On December 2, 2009, Mr. MacQuigg made a request under the New Mexico Inspection of Public Records Act ("IPRA Request") to the custodian of records for APS, defendant Rigo Chavez, for "two of the three investigations into the scandal into the [APS police department] during late 2006 and 2007." *See* A.  Plaintiff requested both an "internal investigation done by APS" and an "independent investigation done by Access Investigations." *See id.*

93.     The investigations Mr. MacQuigg sought related to controversies surrounding APS's former police chief, Gil Lovato.

94.     Defendant Chavez did not issue a response within 15 days of Mr. MacQuigg's response as is required under the IPRA.

95.     Consequently, Mr. MacQuigg, on June 9. 2010, submitted a letter to Defendant Chavez reminding him of the December 2, 2009, IPRA Request and reiterating his request for the records sought. *See* Ex. E.

96.     On June 14, 2010, Defendant Chavez responded by letter.  In his response Defendant Chavez claimed that Bill Reed, the then APS police chief, had responded to the request by indicating that Mr. MacQuigg "could review the investigation into the actions of Gil Lovato."  Ex. F.  Defendant Chavez further stated that "because I did not hear back from you, I was under the impression that you received what you had requested."  *Id.*  Defendant Chavez then offered to provide the records once again.  *Id.*

97.     On June 18, 2010, Mr. MacQuigg sent an email to Mr. Reed asking whether the investigation he sought and that related to Gil Lovato was complete and could be disclosed.  Ex. G.

98.     On June 21, 2010, Mr. Reed sent Mr. MacQuigg an e-mail stating that the investigation had been completed and would be sent to the district attorney's office "shortly." *Id.*  Mr. Reed also stated that the report would be made available for inspection after it was submitted to the district attorney's office.  *See id.*

99.     On June 22, 2010, Defendant Rigo Chavez submitted a response to Mr. MacQuigg's IPRA Request stating, "[y]ou requested a report of an internal investigation and an independent investigation conducted by Access Investigations. There was only one investigation done and that was the one done by Robert Caswell Investigations.  That investigation was used both internally and in the suit that followed. I have requested a copy of that investigation from the attorneys who represented APS in the law suits that followed the termination of the employment of Gil Lovato.  When I receive that copy, I will need to go through it and redact any information that is protected from disclosure by the Act."  Ex. H.

100.    On July 21, 2010, defendant Chavez issued another response, this time denying Mr. MacQuigg's December 2, 2009, request entirely.  In the denial letter, Defendant Chavez

states "[a]s I wrote in my June 22, 2010 letter, there was only one investigation into the conduct

of Gilbert Lovato.  It was completed in March 2007.  My office received a copy of that

investigation and upon review of it and in consultation with Art Melendres, the district's

attorney, have (sic) determined the investigation is not subject to release under the Act.

Therefore your request is denied by me as custodian of records for the Albuquerque Public

Schools because the investigation is considered a 'letter or memorandum which (is) a matter of

opinion in a personnel file' and is exempt from disclosure under the act." Ex. I.

## V.  CLAIMS

### FEDERAL LAW CLAIMS

### COUNT I – CLAIM UNDER 42 U.S.C. § 1983 FOR VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH – PRIOR RESTRAINT

101.   Plaintiff incorporates by reference all proceeding allegations.

102.   At all material times, the Defendants' conduct was under color of federal law,

statute or authority.

103.   The First Amendment protects Plaintiff's right to attend and to participate in the

public meetings of the APS Board.

104.   A public meeting of the APS Board is a designated public forum under the First

Amendment.

105.   Defendants deprived Plaintiff of his First Amendment rights by banning him from

the public meetings of the APS Board.

106.   Defendants' ban is an impermissible prior restraint on Plaintiff's protected

activities.

107.   The ban reflects the exercise of unbridled discretion to Defendants.

24

108.    The ban places no time limits within which Defendants must reinstate or restore Plaintiff's right to attend the public meetings of the APS Board.

109.  The ban violates the Plaintiff's rights as secured under the First and Fourteenth amendments of the United States Constitution.

## COUNT II – CLAIM UNDER 42 U.S.C. § 1983 FOR VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH – VIEWPOINT DISCRIMINATION

110.    Plaintiff incorporates by reference all proceeding allegations.

111.    At all material times, the Defendants' conduct was under color of federal law, statute or authority.

112.    The First Amendment protects Plaintiff's right to attend and to participate in the public meetings of the APS Board.

113.    A public meeting of the APS Board is a designated public forum under the First Amendment.

114.    Defendants deprived plaintiff of his First Amendment rights by ejecting or prohibiting him from speaking during the public meetings of the APS Board.

115.    Defendants' took these actions because of the content of Plaintiff's protected speech.

116.    Defendants' actions were not narrowly drawn to effectuate a substantial or compelling governmental interest.

117.  Defendants' conduct violated Plaintiff's rights as secured by the First and Fourteenth Amendments of the United States Constitution.

**COUNT III – CLAIM UNDER 42 U.S.C. § 1983 FOR VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH – RETALIATION**

118.    Plaintiff incorporates by reference all proceeding allegations.

119.    At all material times, the Defendants' conduct was under color of federal law, statute or authority.

120.    The First Amendment protects Plaintiff's right to attend and to participate in the public meetings of the APS Board.

121.    A public meeting of the APS Board is a designated public forum under the First Amendment.

122.    Defendants' actions caused Plaintiff to suffer injuries that would chill a person of ordinary firmness from continuing to engage in the protected activities.

123.    Defendants' actions were substantially motivated as a response to Plaintiff's exercise of constitutionally protected activities.

124.  Defendants' conduct violated the Plaintiff's rights, as secured by the First and Fourteenth Amendments to the United States Constitution.

**COUNT IV – CLAIM UNDER 42 U.S.C. § 1983 FOR VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS**

125.    Plaintiff incorporates by reference all proceeding allegations.

126.    At all material times, the Defendants' conduct was under color of federal law, statute or authority.

127.    The First Amendment protects Plaintiff's right to attend and to participate in the public meetings of the APS Board.

128.    A public meeting of the APS Board is a designated public forum under the First Amendment.

26

129.    Plaintiff's First Amendment rights are a liberty interest protected by the Fourteenth Amendment.

130.    Defendants' failed to provide Plaintiff with an opportunity to be heard at a meaningful time and in a meaningful manner with respect to their ban on his attendance at and participation in public meetings.

131.    Defendants' actions against Plaintiff's First Amendment rights were taken arbitrarily and capriciously.

## COUNT V – DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT RIGHTS

132.    Plaintiff incorporates by reference the claims, facts, and allegations set forth in the above paragraphs.

133.    As demonstrated above in the preceding paragraphs, Defendants have violated Plaintiff's First and Fourteenth Amendment rights by restraining his right to attend and speak at the public meetings of the APS Board.  As such, Plaintiff is entitled to declaratory relief that Defendants have violated his constitutional rights.

134.    Because Defendants have violated Plaintiff's First and Fourteenth Amendment rights by restraining his right to attend and speak at the public meetings of the APS Board, Plaintiff is entitled to an injunction ordering the Defendants to refrain from further implementing or enforcing their ban.

## STATE LAW CLAIMS

## COUNT VI – VIOLATION OF THE NEW MEXICO INSPECTION OF PUBLIC RECORDS ACT

135.    Plaintiff incorporates by reference the claims, facts, and allegations set forth in the above paragraphs.

27

136.    Defendants have violated the New Mexico Inspection of Public Records Act by failing to produce the public records properly requested by the Plaintiff as required by the IPRA.

137.    Defendants have unlawfully denied the request made by Plaintiff by failing to respond to Plaintiff's request within a reasonable time period, as required by NMSA 1978 § 14-2-10.

138.    Defendants, if relying on any exception under the IPRA as a basis for withholding records, failed to issue a proper denial of the records requests using the denial procedure set forth in NMSA 1978§ 14-2-11(B).

139.    Pursuant to NMSA 1978 § 14-2-11(C) and NMSA 1978 § 14-2-12(D), Plaintiff is entitled to statutory damages, costs and reasonable attorneys' fees.

## COUNT VII – DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE NEW MEXICO INSPECTION OF PUBLIC RECORDS ACT

140.    Plaintiff incorporates by reference the claims, facts, and allegations set forth in the above paragraphs.

141.    As demonstrated above in the preceding paragraphs, Defendants have violated the provisions of the New Mexico Inspection of Public Records Act by withholding from inspection the public records plaintiff requested.  As such, Plaintiff is entitled to declaratory relief that Defendants have violated the IPRA.

142.    The New Mexico IPRA provides that "(a)n action to enforce the IPRA may be brought by ... a person whose written request has been denied" and that "a district court may issue a writ of mandamus or order an injunction or other appropriate remedy to enforce the provisions of the IPRA."  NMSA 1978 § 14-2-12.

143.    Because Defendants have violated the IPRA by denying Plaintiff all of the public records he requested, plaintiff is entitled to an injunction ordering the defendants to produce all relevant documents in the Defendants possession in unredacted form.

## REQUESTED RELIEF

**WHEREFORE,** Plaintiff respectfully requests the following relief:

A.    That this Court enter a Declaratory Judgment adjudicating that the order banning Plaintiff from attending the public meetings of the APS Board violates the First and Fourteenth Amendments;

B.    That this Court issue an Injunction prohibiting Defendants from excluding Plaintiff from the public meetings of the APS Board, or otherwise censuring his speech during the public comment period of APS Board meetings;

C.    That this Court award nominal and compensatory damages against Defendants for their violation of Plaintiff's clearly established constitutional rights;

D.    That this Court award Plaintiff his costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42. U.S.C. § 1988;

E.    That this Court enter a Declaratory Judgment adjudicating that the denial of the public records requested by Plaintiff is in violation of the New Mexico Inspection of Public Records Act or, if necessary, a writ of mandamus requiring Defendants to produce the requested records;

F.    That this Court enter judgment in favor of Plaintiff on Defendant's violation(s) of the Inspection of Public Records Act;

G.    That this Court enter an Injunction to enforce the provisions of the New Mexico Inspection of Public Records Act;

H.     That this Court award Plaintiff actual and statutory damages for violations of the Inspection of Public Records Act;

I.     That this Court enter an order awarding Plaintiff his costs and reasonable attorney's fees as provided by the Inspection of Public Records Act; and

J.     Such other and further relief as the Court deems just.

Respectfully submitted,

FREEDMAN BOYD HOLLANDER
GOLDBERG URIAS & WARD, P.A.

John W. Boyd
Vincent J. Ward
20 First Plaza, NW, Suite 700
Albuquerque, NM  87102
(505) 842-9960

*Attorneys for Plaintiff*

30

## VERIFICATION

STATE OF NEW MEXICO            )
                               ) SS
COUNTY OF BERNALILLO           )

Charles "Ched" MacQuigg, being first duly sworn under oath, states that he is the named

Plaintiff herein, has read the foregoing Verified Complaint for Violations of the First and

Fourteenth Amendments to the United States Constitution and to Enforce the New Mexico

Inspection of Public Records Act, and the statements made in the Complaint are true and correct

to the best of his knowledge and belief.

Charles "Ched" MacQuigg

SUBSCRIBED AND SWORN TO before me this 2nd day of November, 2012, by
Charles "Ched" MacQuigg.

Notary Public

My commission expires:

4-22-14

**12/02/09  (additional request for records of APS PD corruption)**

To: Custodian of Public Records, Albuquerque Public Schools

From: Charles MacQuigg, 828 Madeira Dr.SE. 87108  phone 505-268-3845

This constitutes a request for **public records.**

I am requesting the opportunity to inspect the reports of two of the three investigations into the scandal in the APSPD during late 2006 early 2007.

1. I request the opportunity to inspect the report following the internal investigation done by APS.

2. I request the opportunity to inspect the independent investigation done by Access Investigations.

I understand that a third investigation is underway by the APSPD.  I have asked APS Police Chief Bill Reed if releasing the Access Investigation will interfere with his ongoing investigation.  He responded by saying that, the release of the Access Investigation "... would not interfere with what we are doing."

The NNIPRA Compliance guide states the following;

    1.  This exception does not protect all records held by a law enforcement agency.  A request to inspect law enforcement records can be denied only if the records requested reveal confidential sources, information or individuals accused but not charged with a crime.  Otherwise inspection must be allowed.

    2.  Further, the guide states, The Act requires the applicable records custodian to separate out the exempt information in a file or document before making the record available for inspection.  The fact that a file may contain some information taht may not be disclosed does nt protect all the information from public disclosure.



EXHIBIT
A

**Albuquerque Public Schools**

Regular

Wednesday, November 4, 2009 5:00 PM

Albuquerque Public Schools John Milne Community Board Room, 6400 Uptown Blvd NE

I. Call to Order

   A. Pledge of Allegiance / Moment of Silence

   B. Roll Call

   C. Adoption of the November 4, 2009, Agenda and Approval of the September 25, 2009, Special Meeting Minutes (Discussion/Action)

        Draft Minutes 9 25 09.rtf

II. Recognition of Students, Staff and Community

   A. Celebrating Staff Success

      I. Gregg McMann, Zia Elementary School principal for Associate of the Year by the New Mexico Association of Physical Education, Health, Recreation and Dance

      II. Marilyn Carpenter, Los Ranchos Elementary School teacher for Elementary Teacher of the Year by the New Mexico Association of Physical Education, Health, Recreation and Dance

      III. Elaine Romero, Wherry Elementary School teacher and APS Teaching Ambassador Fellow for 2009-2010

   B. Celebrating Student and Staff Success

      I. Highland High School teachers Lucia Leen, Tracie Bartlett, and Gordon Monaghan for their students' success in passing the Advanced Placement exam with a score of 3 or higher. Students include Efrain Ibarra, Andrew Balis, Taylor Klinkman, Bree Eliason-Stevens and Jessica Lopez

      II. Highland High School Coach Gary Sanchez for his fifth state trophy and the school's track team for winning its 22nd Championship; coaching team includes Andy Murray, Stacy Washington, and Steve Karaffa; students include Chaz Lewis, Warrick Campbell, Tung Tat, David Richards, Tyson Holiday, Matthew Tetreault, Brennan Howell, Dylan Chavez, Sanue Rcom, and Alex Mercer

III. Public Forum

IV. Matters of Information

   A. Superintendent's Report

   B. Board Member Comments

   C. President's Report

V. Special Issues

   A. 2009 Special Session Update (Discussion/Action)

      I. Letter to Legislators and Officials(Discussion/Action)

   B. Approval of Supplement for School Bus Fleet Service Contract (Discussion/Action) Presenter: Dr. J. Patrick Garcia

        FLEET SERV CONTR HERRERA 11-04-09.pdf

        Supplement for School Bus Fleet Service Contract.

   C. Approval of Budget Adjustment Request for Rental Fee (Discussion/Action) Presenter: Dr. J. Patrick Garcia

        BAR for Rental Fee.pdf

   D. Sharing of Council of Great City Schools Information (Discussion/Action)

VI. Approval of Consent Calendar Items (Discussion / Action)

   A. Consideration for Approval of Capital Outlay/Property/Technology Matters (Discussion/Action)

      I. Approval of the Design Development for Chaparral Elementary School, Kindergarten/Primary Classroom



EXHIBIT
B

Addition

📎 COPT Chapparral.pdf

II. Approval of the Authorization to Grant the NMGCO Gas Easements for the Operation of Gas Facilities within Tract A of the Plat of CHAPARRAL ELEMENTARY SCHOOL, which is known as Chaparral Elementary School (Chaparral ES)

📎 COPT NMGCO Chaparral.pdf

III. Approval of the Authorization to Grant PNM Electric Easements for the Operation of Electric Facilities within Tract A of the plat of CHAPARRAL ELEMENTARY SCHOOL, which is known as Chaparral Elementary School (Chaparral ES)

📎 COPT PNM Chaparral.pdf

IV. Approval of the Authorization to Grant PNM an Electric Easement for the Operation of Electric Facilities within Tract E, of the Plat of BOARD OF EDUCATION ADDITION, which is known as Family School

📎 COPT PNM Family School.pdf

V. Approval of the Authorization to Grant PNM an Electric Easement for the Operation of Electric Facilities within Block 35 of Plat of MESA VILLAGE SUBDIVISION, which is known as Grant Middle School (Grant MS)

📎 COPT PNM Grant MS.pdf

VI. Approval of the Authorization to Grant PNM an Electric Easement for the Operation of Electric Facilities within a tract of land known as Lowell Elementary (Lowell ES)

📎 COPT PNM Lowell ES.pdf

VII. Approval of the Authorization to Grant PNM an Electric Easement for the Operation of Electric Facilities within Tract A-1, of Plat of SUSIE RAYOS MARMON ELEMENTARY SCHOOL, which is known as S.R. Marmon Elementary School (S.R. Marmon ES)

📎 COPT PNM SR Marmon ES.pdf

VIII. Approval of the Authorization to Grant PNM Electric Easements for the Operation of Electric Facilities within Tract A, of the Plat of TRACT A, EDWARD GONZALES ELEMENTARY SCHOOL, which is known as Helen Cordero/Edward Gonzales Elementary Schools (the Cordero ES/Gonzales ES Site)

📎 COPT PNM Cordero Gonzales ES.pdf

IX. Approval of the Authorization to Grant the COA a Sidewalk Easement for Sidewalk Improvements within Tract A, of the Plat of TRACT A, EDWARD GONZALES ELEMENTARY SCHOOL, which is known as Helen Cordero/Edward Gonzales Elementary Schools (the Cordero ES/Gonzales ES Site) Martin Eckert

📎 COPT City Cordero Gonzales ES.pdf

X. Approval of the Authorization to Grant the ABCWUA a Permanent Public Reuse Water Line Easement for the Construction and Operation of Reuse Water Line Improvements within Tract C-1 of Plat of Tracts B-1 and C-1 A.P.S. CENTRAL OFFICE ADDITION, which is known as the Lincoln Complex (Lincoln Complex)

📎 COPT ABCWUA Lincoln Complex.pdf

XI. Approval of the Authorization to Grant the ABCWUA a Permanent Public Reuse Water Line Easement for the Construction and Operation of Reuse Water Line Improvements within Tract A of A.P.S. CENTRAL OFFICE ADDITION, which is known as the Roosevelt Park Lease Parcel (Roosevelt Park)

📎 COPT ABCWUA Roosevelt.pdf

XII. Approval of the Authorization to Grant the ABCWUA a Permanent Public Water Line Easement for the Operation of the Yale Well #3 Water Line Facilities within the Northeastern Portion of Tract C-1 of Plat of Tracts B-1 and C-1 A.P.S. CENTRAL OFFICE ADDITION, which is known as the Lincoln Complex (Lincoln Complex)

📎 COPT ABCWUA Lincoln Complex Yale.pdf

XIII. Approval of the Board Resolution Approving the Invitation to Participate in the 2009-2010 NMDOT Local

Government Road Fund CC-program for Highland HS (Highland HS)

📎 COPT NMDOT HHS.pdf

XIV. Approval to Sell Lots 16 and 17 of Block 9, Tract 3, Unit 2 of North Albuquerque Acres, which has been designated by the County of Bernalillo as Parcel 4-1 (Parcel 4-1), to the County of Bernalillo (County) for the Eubank Widening (San Antonio to Paseo Del Norte) Project

📎 COPT Bernco Eubank Widen.pdf

B. Consideration for Approval of Policy and Instruction Matters (Discussion/Action)

I. Approval of the District Educational Plan for Student Success (EPSS)

📎 POLICY EPSS action memo .pdf

II. Approval of the 2010-2011 Traditional School Calendar (positive report by partial committee)

📎 Policy Calendar 2010-2011.pdf

📎 BOE Calendar Approval.rtf

III. Approval of the Charter Amendment Request - Gordon Bernell Charter School (Addition of Third Campus) (positive report by partial committee)

📎 Amend Req Gordon Bernell.pdf

📎 Amend Rec Gordon Bernell.pdf

📎 Amend Req Form Gordon Bernell.pdf

IV. Approval of the Charter Amendment Request - Christine Duncan Community Charter School (Name Change to Christine Duncan's Heritage Academy) (positive report by partial committee)

📎 Amend Req Christine Duncan.pdf

📎 Amend Rec Christine Duncan.pdf

📎 Amend Req Form Christine Duncan.pdf

VII. Committees

A. ABC Community Schools Partnership Committee

I. The next meeting of the ABC Community Schools Partnership will be held on Thursday, November 12, 2009, at 8 a.m. in the City Council Committee Room on the 9th floor of the City/County Government Center.

II. Status of Matters Under Consideration

B. Audit Committee

I. The next meeting of the Audit Committee will be held on Wednesday, November 11, 2009, at 5:00 p.m., in the DeLayo Martin Community Room.

II. Status of Matters Under Consideration

C. Capital Outlay Committee

I. The next meeting of the Capital Outlay / Property / Technology Committee will be held on Tuesday, November 17, 2009, at 7:30 a.m., in the DeLayo Martin Community Room.

II. Status of Matters Under Consideration

D. Community Capital Advisory Commission

I. The next meeting of the Community Capital Advisory Commission will be held on November 23, 2009, at 11:00 a.m. in the Rio Bonito/Rio Grande conference rooms located at 6400 Uptown Blvd NE, on the first floor of the West Tower.

II. Status of Matters Under Consideration

E. District Relations Committee

      I. The next meeting of the District Relations Committee will be held on Monday, November 16, 2009, at 5:00 p.m., in the DeLayo Martin Community Room.

      II. Status of Matters Under Consideration

F.  Finance Committee

      I. The next meeting of the Finance Committee will be held on Monday, November 9, 2009, at 5:00 p.m., in the DeLayo Martin Community Room.

      II. Status of Matters Under Consideration

G.  Policy Committee

      I. The next meeting of the Policy Committee will be held on Tuesday, November 10, 2009, at 5:00 p.m., in the DeLayo Martin Community Room.

      II. Status of Matters Under Consideration

VIII. Announcement of Upcoming Board Meetings:

A.  The next Special Board meeting will be held on Friday, November 13, 2009, at 7:30 a.m. in the DeLayo Martin Community Room.

B.  The next Regular Board Meeting will be Wednesday, November 18, 2009, at 5:00 p.m., in the John Milne Community Board Room.

IX. Adjournment

ALBUQUERQUE PUBLIC SCHOOLS
AUDIT COMMITTEE MEETING
August 25, 2010

MEETING SUMMARY

**COMMITTEE MEMBERS PRESENT:**    David Robbins (chairperson), Dolores Griego, Martin Esquivel (By phone until item IX, when he joined in person), Lorenzo Garcia, David Peercy, Robert Lucero, Winston Brooks (Ex-officio member), Don Moya (Ex-officio member)

**ABSENT:**    Paula Maes, Alan Gutowski and Demesia Padilla

**Participants**:   Dr. Brad Winter, Peg Koshmider, Sonia Montoya, Joyce Ramirez, Racheal Gonzales, Brenda Pohl, Tami Coleman, Amy Carter, Brenda Yager, and Andi Trybus

I.  Call to Order
*The meeting was called to order at 5:00 p.m.  The chairperson explained that the format for this meeting was different from previous meetings due to legislative requirements regarding the external audit.*

II. Adoption of  August 25, 2010, Audit Committee Agenda and Approval of the July 1, 2010, Minutes and May 26, 2010, Audit Minutes (Discussion/Action)
*Chairperson David Robbins asked for approval of the August 25, 2010, agenda and the minutes of July 1, 2010 and May 26, 2010 Audit meetings.  Robert Lucero motioned with Lorenzo Garcia seconding the motion.  David Peercy noted that the minutes for the May 26, 2010, Audit Committee meeting should be changed to reflect what time Demesia Padilla arrived after the start of the meeting.   Committee members unanimously approved the minutes with the corrections.  The motion carried.*

III. Status of APS Audit (Discussion)
*Tami Coleman introduced Amy Carter from Moss Adams.  Ms. Carter stated that there was nothing new to report on the financial audit since the last meeting.  Ms. Carter also stated that they are on track to finish the audit on time.  David Robbins clarified that activity has been taking place within APS in preparing for the audit.  Moss Adams will be back on site on September 27, 2010.  Tami Coleman stated that they are preparing the district's financial statements and the statements are on track also.  Moss Adams and Meyners will communicate with each other when appropriate.*

IV.    Adjourn to Executive Session pursuant to the Open Meetings Act NMSA 1978 (10-15-1(H)) and NMSA 1978, section 12-6-5 (Reports of Audits) for the Purpose of Discussing Limited Matters Relative to Preliminary Findings on the External Financial Audit (Discussion/Action)
*Amy Carter stated that since there were no potential findings identified at this time, there was no reason to adjourn to executive session.*

V.    Reconvene to Open Session
*The committee did not go into executive session.*

EXHIBIT
C

VI.     **Statement of Closure**
        *The committee did not go into executive session.*

VII.    **Action on Items Discussed in May 26, 2010, Audit Committee Executive Session (Discussion/Action)**
        *Since there was not a quorum at the May 26, 2010, Audit Committee, David Robbins stated that action needed to be taken at this time on the agenda items from that meeting discussed in executive session.  David Peercy motioned to accept the audit reports presented at the May 26, 2010, Audit Committee meeting, which included five non-compliant/partial activity fund audits, purchasing card audits and one equipment inventory audit.  Robert Lucero seconded the motion.  The motion carried.*


VIII.   **Special Issues**

        A.      **Silent Whistle**
                *Peg Koshmider updated the committee with statistics regarding the new vendor. Conversion is done and went very well.  There will be a 25 percent decrease in the cost with the new vendor.  Posters and assorted notifications have been distributed throughout the district, schools and departments.  David Robbins asked about employee notifications.  Ms. Koshmider explained that communication was made with the Albuquerque Journal along with district communications.  The Maintenance and Operations Department received posters first because most employees do not have computer access.  We will be sending out another publication in September 2010.  David Robbins asked for the top three categories of calls that are being received. Ms. Koshmider said that the types of calls vary depending on what is happening within the district.  Theft, nepotism and personality issues are common types of calls.  Ms. Koshmider will expand the report for the next committee meeting.*

        B.      **Stolen Items**
                *Robert Lucero motioned for approval of the stolen items report.  David Peercy seconded the motion.  Ms. Koshmider stated that during the 2009-2010 school year, there were more than $176,000 of district assets, equipment and cash that were reported stolen to the APS Police Department and a police report was filed. Internal Audit is unsure of how many stolen items are not reported to APS Police. This information needs to be reported to the state auditor.  David Peercy asked if there is anything that can be done to help staff lock up equipment.  Brad Winter explained that the district installs special technology to help keep track of the laptops.  David Robbins remarked that inventory control is an issue throughout the district.  If inventory control was better maintained, it may help prevent theft. The motion carried.*

IX.     **Adjourn to Executive Session pursuant to the Open Meetings Act NMSA 1978 (§10-15-1(H) (2)) for the purpose of discussing limited personnel matters in connection with Internal Audit (Discussion/Action)**
        *Robert Lucero motioned to move to executive session.  David Peercy seconded the motion.  A roll call vote was called to verify board member agreement to close the meeting and Lorenzo Garcia, Dolores Griego, Martin Esquivel, Robert Lucero, David Peercy, David Robbins, Don Moya and Winston Brooks answered in the affirmative. Paula Maes, Alan Gutowski and Demesia Padilla were not present for the vote.  The*

*motion passed. David Robbins asked that all electronic devices be turned off at this time.*

**The committee adjourned to Executive Session pursuant to (§ 10-15-1 (H) (2)) for the purpose of discussing limited personnel matters in connection with Internal Audit:** five non-compliant/partial activity fund audits, sixteen operational/federal funds audits and three audits/reports.

X.     Reconvene to Open Session

XI.    Statement of Closure

*Mr. Robbins stated that the Audit Committee met in executive session on August 25, 2010, for the purpose of discussing limited personnel matters in connection with Internal Audit as authorized by the limited personnel matters exception -NMSA 1978,10-15-1(H) (2). The matters discussed in the executive session were limited only to those specified. At this point, David Robbins asked two members of the public to leave the meeting for not turning off their recording devices in a timely manner and for disrupting the meeting.*

XII.   Action, as needed, on items discussed in Executive Session

*David Peercy motioned for acceptance of the audits, which included five non-compliant activity funds audits, 16 general operational/federal fund audits, John Adams Middle School inventory audit, after-school dance instructor audit and Food Services follow-up audit. Robert Lucero seconded the motion. A roll call vote was called to verify board member agreement for acceptance of the audits. Lorenzo Garcia, Dolores Griego, Martin Esquivel, Robert Lucero, David Peercy, David Robbins, Don Moya and Winston Brooks answered in the affirmative. Paula Maes, Alan Gutowski and Demesia Padilla were not present for the vote. The motion passed.*

XIII.  Adjournment

*The meeting was adjourned at 6:45 pm.*



**ALBUQUERQUE PUBLIC SCHOOLS**

Board of Education

*Expect Great Things!*

Winston Brooks
SUPERINTENDENT

Martin Esquivel
District 4

September 1, 2010

Mr. MacQuigg,
828 Madiera Drive SE
Albuquerque, NM 87108

Dear Mr. MacQuigg:

Due to a number of ongoing and escalating events involving yourself at various meetings of the APS Board of Education over the past year and recently on August 25, it is in the best interest of members of the Board of Education and APS employees that we are revoking your privilege to attend meetings of the Board of Education. This revocation of your privilege to attend meetings is based on concerns for the safety of not only board members but of APS employees, some of whom have expressed concerns that they do not feel safe with you attending meetings.

If you would like your attendance privilege reinstated, then you must make arrangements to meet with me and Deputy Chief Tellez to discuss acceptable decorum from you and to clarify processes involving interaction between members of the public and the APS Board of Education.

If we determine after this meeting that you are sincere in adhering to our rules of decorum, you will be allowed once again to participate. If, however, you cause any disruption or disturbance of public meetings, you will be permanently banned from attending meetings and having access to the APS administration building and facilities in general. If this proves to be the case, appropriate APS staff will be alerted.

Enclosed with this notification is a letter dated November 5, 2009 from me that addresses the same concerns. We sincerely want to work with you; however, when you exhibit threatening, aggressive and disrespectful behavior, we can only assume that your intentions could be a danger to individuals. We hope to hear from you soon to arrange the meeting.

Sincerely,

Martin R. Esquivel, President
APS Board of Education

Steve Tellez, Deputy Chief
APS Police Department

EXHIBIT
D

enclosure: November 5, 2009 letter

6400 Uptown Blvd. NE Suite 100E • P.O. Box 25704 • Albuquerque, NM 87125-0704 • 505.880.3739 • 505.880.2575

*Celebrate the 8 essential goals toward better education for the Albuquerque community!*

**Subject:** Request for Public Records
**From:** Ched MacQuigg <cmacquigg@comcast.net>
**Date:** Wed, 09 Jun 2010 13:40:34 -0600
**To:** chavez_ri@aps.edu, "Duncan, Brandie" <duncan_b@aps.edu>

To: Custodian of Public Records, Albuquerque Public Schools

From: Charles MacQuigg, 828 Madeira Dr.SE. 87108  phone 505-268-3845

Mr. Chavez,

On **December 2, 2009 at 8:51 am,** I sent to you a request for public records regarding two of the three investigations into the corruption in the APS Police Department.  You indicated that you opened that email at **9:33** that same morning.  You did not send a three day letter, and you did not deny the request, as required by the law.

I have heard nothing from you about the request.

On **January 4, 2010,** I wrote to **APS Risk Management**, about the legal liability APS was exposed to, with regard to your failure to respond to my request.  **Brandie Duncan** and I exchanged emails regarding the failure and APS' intentions.  She indicated that she would contact you, and had also copied "one of our attorneys" (Art Melendrez).  She promised to be "in touch soon".

It has now been more than five months, and I have not heard from either her or you.

I would like to know whether you intend to comply with the Inspection of Public Records Act and surrender the records I have asked for.

Grateful for your time and attention

ched macquigg



EXHIBIT
E



**ALBUQUERQUE PUBLIC SCHOOLS**

Communications Office

Winston Brooks
SUPERINTENDENT

Rigo F Chávez
DIRECTOR

June 14, 2010



Charles MacQuigg
828 Madeira Dr. SE
Albuquerque, NM 87108

Dear Mr. MacQuigg:

This letter is in response to your e-mail received June 11, 2010, regarding a request for information about an investigation regarding the Albuquerque Public Schools Police Department.

You stated in your e-mail that I did not respond to your request. You are correct, instead Bill Reed, director of APS Police responded. A copy of that e-mail is enclosed. He wrote that you could review the investigation into the actions of Gilbert Lovato. Because I did not hear back from you, I was under the impression that you received what you had requested.

I will contact Bill Reed again and get a copy of the investigation he offered to provide to you. You may contact me at 881-8421, ext. 2, to set up a mutually agreeable time to review that document.

If you have any other questions, please do not hesitate to contact me at 881-8421, ext. 2.

Sincerely,

Rigo Chavez, director
APS Communications/
Custodian of Records

Cc: Bill Reed, APS Police; Brandie Duncan, APS Risk Management Art Melendres, Modrall Law Firm; file

EXHIBIT
F

*Celebrate the 8 essential goals toward better education for the Albuquerque community!*

6/18/2010

To: Rigo Chavez, Records Custodian
Albuquerque Public Schools[

From: Charles MacQuigg
828 Madeira Dr. S.E.
505-268-3845

I would like to inspect and/or copy the following records;
    All public records associated with my Request for Public Records, emailed to you on
December 2, 2009 and copied below.

In the event the District claims privileged records, please furnish a log of those privileged
records together with the exception(s) you argue apply.

To: Custodian of Public Records, Albuquerque Public Schools

From: Charles MacQuigg, 828 Madeira Dr.SE. 87108  phone 505-268-3845

This constitutes a request for **public records.**

I am requesting the opportunity to inspect the reports of two of the three investigations into the
scandal in the APSPD during late 2006 early 2007.

1. I request the opportunity to inspect the report following the internal investigation done by
APS.

2. I request the opportunity to inspect the independent investigation done by Access
Investigations.

I understand that a third investigation is underway by the APSPD.  I have asked APS Police
Chief Bill Reed if releasing the Access Investigation will interfere with his ongoing
investigation.  He responded by saying that, the release of the Access Investigation "... would not
interfere with what we are doing."

The NNIPRA Compliance guide states the following;

1. This exception does not protect all records held by a law enforcement agency.  A request
   to inspect law enforcement records can be denied only if the records requested reveal
   confidential sources, information or individuals accused but not charged with a
   crime.  Otherwise inspection must be allowed.
2. Further, the guide states, The Act requires the applicable records custodian to separate
   out the exempt information in a file or document before making the record available for



EXHIBIT
G

inspection.  The fact that a file may contain some information taht may not be disclosed does nt protect all the information from public disclosure.

**Chavez, Rigo F**

| | |
|---|---|
| **From:** | Reed, Bill W |
| **Sent:** | Monday, June 21, 2010 1:38 PM |
| **To:** | 'Ched MacQuigg' |
| **Cc:** | Chavez, Rigo F |
| **Subject:** | RE: Investigation update |

Investigation is completed. Report is being finalized and will go to the DA's office shortly.
Once it goes to the DA's office it will be available for public inspection.

-----Original Message-----
From: Ched MacQuigg [mailto:cmacquigg@comcast.net]
Sent: Friday, June 18, 2010 5:26 PM
To: Reed, Bill W
Subject: Investigation update

I am wondering if the investigation related to Gil Lovato is complete.

grateful for your time and attention.

ched macquigg

**ALBUQUERQUE PUBLIC SCHOOLS**
Communications Office

Winston Brooks
SUPERINTENDENT

Rigo F Chávez
DIRECTOR

June 22, 2010

Charles MacQuigg
828 Madeira Dr. SE
Albuquerque, NM 87108

Dear Mr. MacQuigg:

This letter is in response to your e-mail received June 21, 2010, requesting records under the NM Inspection of Public Records Act regarding investigations of the Albuquerque Public Schools Department conducted in 2006 and 2007.

You requested a report of an internal investigation and an independent investigation conducted by Access Investigations. There was only one investigation done and that was the one done by Robert Caswell Investigations. That investigation was used both internally and in the suit that, followed. I have requested a copy of that investigation from the attorneys who represented APS in the law suits that followed the termination of the employment of Gilbert Lovato. When I receive that copy, I will need to go through it and redact any information that is protected from disclosure by the Act.

Because I do not have access to the report, it could take more than 15 days to provide the documents you request. I should have that information by July 16.

Should you want copies of the document, the district charges $.50 (50 cents) per page.

If you have any other questions, please do not hesitate to contact me at 881-8421, ext. 2.

Sincerely,

Rigo Chavez, director
APS Communications/
Custodian of Records

EXHIBIT
H

Cc: Bill Reed, APS Police; Brandie Duncan, APS Risk Management; Andrea Trybus, APS Human Resources; Art Melendres, Modrall Law Firm; file

6400 Uptown Blvd. NE  Suite 400W  Albuquerque, NM 87110-4204   505.881.8421   505.872.8864 fax

*Celebrate the 8 essential goals toward better education for the Albuquerque community!*

# ALBUQUERQUE PUBLIC SCHOOLS
Communications Office

Winston Brooks
SUPERINTENDENT

Rigo F Chávez
DIRECTOR

July 21, 2010

Charles MacQuigg
828 Madeira Dr. SE
Albuquerque, NM  87108

Dear Mr. MacQuigg:

This letter is a follow up to my letter of June 22, 2010, regarding your request for records under the NM Inspection of Public Records Act regarding investigations of the Albuquerque Public Schools Department conducted in 2006 and 2007.

As I wrote in my June 22, 2010 letter, there was only one investigation into the conduct of Gilbert Lovato. It was completed in March 2007. My office received a copy of that investigation and upon review of it and in consultation with Art Melendres, the district's attorney, have determined that the investigation is not subject to release under the Act. Therefore your request is denied by me as custodian of records for the Albuquerque Public Schools and by Art Melendres as attorney for the Albuquerque Public Schools because the investigation is considered a "letter or memorandum which (is) a matter of opinion in a personnel file" and is exempt from disclosure under the act.

If you have any other questions, please do not hesitate to contact me at 881-8421, ext. 2.

Sincerely,

Rigo Chavez, director
APS Communications/
Custodian of Records

Cc: Bill Reed, APS Police; Brandie Duncan, APS Risk Management; Andrea Trybus, APS Human Resources; Art Melendres, Modrall Law Firm; file



EXHIBIT
I

6400 Uptown Blvd. NE  Suite 400W   Albuquerque, NM 87110-4204   505.881.8421   505.872.8864 fax

*Celebrate the 8 essential goals toward better education for the Albuquerque community!*