IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES "CHED"  MACQUIGG,

   Plaintiff,

vs.            Civ. No. 12-1137 MCA/SCY

THE ALBUQUERQUE PUBLIC
SCHOOLS BOARD OF EDUCATION,
*et al.*,
   Defendants.

## MEMORANDUM OPINION AND ORDER

  This case is before the Court upon Defendant Martin Esquivel's Motion for Summary Judgment on Counts I-VIII of Plaintiff's Complaint. [Doc. 79] The Court has considered the written submissions of the parties, the record in this case, and the applicable law, and is otherwise fully advised.

**BACKGROUND**

  Defendant APS Board of Education ("the Board") comprises seven elected members, who exercise the powers conferred by NMSA 1978, § 22-5-4.  At the times material to this action, Defendant was President of the Board.

  Plaintiff is a former APS teacher.  Plaintiff retired from APS in 2004.  During his employment with APS, Plaintiff was exposed to a "values based education curriculum"

1

known as Character Counts.  Plaintiff believes that individual Board members and APS administrators are shirking their responsibilities to APS students by not publicly committing themselves to serve as Character Counts role models.  Beginning in 2006, Plaintiff has maintained a blog site, *Diogenes' Six*.  Between August 2006 and September 2010, Plaintiff posted 4,200 blog entries, many of which address the administration of APS.

The Board holds regular bi-weekly meetings, which are open to the public.  The meetings generally are held in the Board room at APS's main office in Uptown Albuquerque. The meetings are broadcast live over the internet and may be viewed at APS's website.  By practice and policy, the Board sets aside up to thirty minutes of each meeting for public comment. Attendees typically are allotted two minutes for their comments.  Plaintiff has attended numerous meetings of the Board and its committees. On between fifty and one-hundred occasions, Plaintiff has spoken during the public comment segment of Board meetings. The Board generally treats Plaintiff courteously, listening to Plaintiff's remarks without interfering or interrupting Plaintiff.  However, on certain occasions he has been ejected from meetings of the Board or its committees.

On November 4, 2009, Plaintiff attended a meeting of the Board.  Plaintiff was ejected from the meeting at the direction of Defendant.  On November 5, 2009, Defendant wrote Plaintiff elaborating on why Plaintiff had been ejected from the November 4, 2009 meeting, and warning Plaintiff that if he ignored the Board's rules of decorum at future meetings, he would be asked to leave or would be removed.

On August 19, 2010, APS hosted a gubernatorial debate at the performing arts center at Eldorado High School.  Due to the size of the auditorium, seating was limited, and access to the debate was by invitation only.   Plaintiff initially sought a press pass for the debate.   Plaintiff was denied a pass.  He thereafter acquired a ticket issued to an invited guest.  When he presented the ticket, he was denied admission.

On August 25, 2010, Defendant Robbins ejected Plaintiff from a meeting of the Audit Committee. Robbins believed that Plaintiff or Plaintiff's associate, Mark Bralley, had recorded a portion of the meeting in violation of Robbins' instructions to attendees.

On September 1, 2010, Defendants Esquivel and Tellez sent Plaintiff a letter informing Plaintiff that "we are revoking your privilege to attend meetings of the Board of Education.  This revocation of your privilege to attend meetings is based on concerns for the safety of not only board members but of APS employees, some of whom have expressed concerns that they do not feel safe with you attending meetings" [Doc. 22-1 at 9]. The letter further stated that "[i]f you would like your attendance privilege reinstated, then you must make arrangements to meet with me and Deputy Chief Tellez to discuss acceptable decorum from you and to clarify processes involving interaction between members of the public and the APS Board of Education."

Plaintiff has not met with Defendants Esquivel and Tellez, and the Board has not reinstated Plaintiff's "attendance privilege."

**DISCUSSION**

    **A.**    **Legal Standards**

    **1.**    **Legal Standards Applicable to a Dispositive Motion Based on Qualified Immunity**

Resolution of a dispositive motion based on qualified immunity involves a two pronged inquiry.  "First, a court must decide whether the facts a plaintiff has alleged or shown make out a violation of a constitutional right." "Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." "With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented." A reviewing court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (citations omitted).

    **2.**    **Summary Judgment Standards**

    Fed. R. Civ. P. 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  As our Court of Appeals has succinctly stated:

    A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.

*Adamson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).  The factual record and reasonable inferences therefrom are viewed in the light

4

most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations. *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

The facts that this case involves First Amendment rights and the affirmative defense of qualified immunity must be taken into account in applying the standards set out above. First, "[u]nlike most affirmative defenses, . . . the plaintiff would bear the burden of persuasion at trial to overcome qualified immunity by showing a violation of clearly established federal law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). Second, notwithstanding the general principle cited in the previous sentence, in the First Amendment context, a plaintiff has the benefit of the allocation to the government of the burden of persuasion on the issue of justification. *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816 (2000) (When the Government restricts speech, the Government bears the burden of proving the constitutionality of its action."). Third, our Court of Appeals has held that "[w]hen the qualified immunity analysis turns on a subjective element, as it does when examining motive, the qualified immunity analysis is 'modified slightly.' The defendant 'must do more than merely raise the [qualified] immunity defense; he must make a prima facie showing of the objective reasonableness of the challenged conduct.'" *McBeth v. Himes*, 598 F.3d 708, 724 (10th Cir. 2010) (citation omitted).

There is an additional principle that must be borne in mind in view of the allocation of the burden of persuasion on justification:

> When the [summary judgment] movant bears the burden of persuasion at
> trial, the movant must produce evidence that would conclusively support its
> right to a judgment after trial should the nonmovant fail to rebut the
> evidence.  In other words, the evidence in the movant's favor must be so
> powerful that no reasonable jury would be free to disbelieve it. Anything
> less should result in denial of summary judgment.

11 *Moore's Federal Practice* §56.40[1][c] (3d ed. 2013).

### 3.    Personal Involvement

 "[C]ommon to all § 1983 . . . claims is the requirement that liability be predicated

on a violation traceable to a defendant-official's 'own individual actions.'"  *Pahls v.*

*Thomas*, 710 F.3d 1210, 1225 (10th Cir. 2013).   Defendant argues that he was involved

in only two of the events on which Plaintiff bases his federal claims:  the ejection of

Plaintiff from the November 4, 2009 Board meeting and the letter dated September 1,

2010.

> The moving party does not have to negate the non-movant's claims in order
> to obtain summary judgment.  "[T]he movant only bears the initial burden
> of  '"showing"—that is pointing out to the district court—that there is an
> absence of evidence to support the nonmoving  party's case.'" "If the
> movant carries this initial burden, the non-movant may not rest upon its
> pleadings, but must set forth specific facts showing a genuine issue for trial
> as to those dispositive matters for which it carries the burden of proof."

*Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citations omitted).  A review

of the materials submitted in opposition to Defendant's motion for summary judgment

satisfies the Court that Plaintiff has not come forward with evidence that would allow a

reasonable jury to find that Defendant was responsible for the decisions to deny Plaintiff

admission to the August 19, 2010 gubernatorial debate and to eject Plaintiff from the

August 25, 2010 Audit Committee meeting. Therefore, in deciding Defendant's Motion

for Summary Judgment the Court has focused on the events of November 4, 2009 and September 1, 2010.

### 4.    First Amendment Standards

Whether Plaintiff's First Amendment rights were violated centers on three questions:  (1) is Plaintiff's speech protected speech? (2) what type of the forum is a Board meeting? and (3) do the justifications for restricting speech proffered by Defendant satisfy the First Amendment standard applicable to the type of forum in question? *Summum v. Callaghan*,  130 F.3d 906, 913 (10th Cir. 1997).

There is no serious question that the speech that Plaintiff  engages in at Board meetings is protected speech.  "[E]xcept for certain narrow categories deemed unworthy of full First Amendment protection—such as obscenity, 'fighting words' and libel—all speech is protected by the first Amendment." *Eichenlaub v. Twp. of Indiana*,  385 F.3d 274, 282-83 (3d Cir. 2004).  Indeed, Defendant  concedes for purposes of his Motion for Summary Judgment that "Plaintiff's underlying message was protected speech. . . ." [Doc. 79 at 11]

The New Mexico Legislature requires public meetings to be open so that the public may "attend and listen."  NMSA 1978, § 10-15-1. The Court concludes that by operation of  § 10-15-1, Board meetings, with the exception of those portions permitted or required to be closed by New Mexico law, are limited public fora for the *receipt* of information about the Board's business.[1]  However, the Legislature has not designated

---

[1] The example of a public library convincingly demonstrates that opening a forum for the receipt of information does necessarily mean that the forum has been opened for all First Amendment activities. *Doe*, 667 F.3d at 1128-29 (recognizing that public libraries are not been designated as fora for speech or debate).

public meetings as public fora for speech or debate by attendees. *Mesa v. White*, 197

F.3d 1041, 1046 (10th Cir. 1999).

Apart from the NMOMA, the Board itself, by practice and policy, generally sets

aside a thirty minute segment of each meeting for public comment related to the

administration of APS. The Court concludes that this thirty minute segment of each

Board meeting is a limited public forum for speech by members of the public relating to

the administration of APS. *Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012)

(observing that school board meeting was "what has variously been called a nonpublic or

a limited public forum"); *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 759 (5th

Cir. 2010) (observing that "[t]he Board meeting here—and the comment session in

particular—is a limited public forum"); *Featherstone v. Columbus City Sch. Dist. Bd. of

Educ.*, 92 Fed. Appx. 279, 282 (6th Cir. 2004) ("A school board meeting, when opened to

the public, is a limited public forum for discussion of subjects relating to the operation of

the schools."); *Jones v. Bay Shore Union Free Sch. Dist.*, 947 F. Supp. 2d 270, 278 (E.D.

N.Y. 2013) ("Typically, school board meetings are limited public fora."); *Garrett v. City

of Seattle*,  No. C10-00094 MJP, 2010 WL 4236946 *3 (W.D. Wash. Oct. 20, 2010)

("The school board meeting was a limited public forum.");  *Liggins v. Clarke County

Sch. Bd.*, Civil Action No. 5:09CV00077, 2010 WL 3664054 *7 (W.D. Va. Sept. 17,

2010) ([I]t is clear from the record that the School Board's April 14, 2008 meeting

constituted a limited public forum."); *Caldwell v. Roseville Joint Union High Sch. Dist.*,

No. CIV. S-05-0061 FCD JFM, 2007 WL 2669545 *15 (E.D. Cal. Sept 7, 2007)

(concluding that "the California Legislature has designated school board meetings as

8

limited public fora, i.e., fora open to the public in general, but limited to comments related to the school board's subject matter"); *Moore v. Asbury Park Bd. of Educ.*, No. Civ.A.05-2971 MLC, 2005 WL 2033687 *9 (D. N.J. Aug.23, 2005) ("The parties agree that the forum here, the Board meeting, is a limited public forum.").

Given the nature of the public comment segment of Board meetings as a limited public forum, the Board may impose restrictions on attendees' speech if the restrictions are (1) viewpoint neutral and (2) reasonable in light of the purpose served by meetings of the Board. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1202-03 (10th Cir. 2007).

> In traditional and designated public fora, content-based restrictions draw strict scrutiny. But in a limited public forum, speech restrictions are constitutional so long as they (1) comport with the definition of the forum (for example, the government cannot exclude election speech from a forum that it has opened specifically for election speech); (2) are reasonable in light of the purpose of the forum; and (3) do not discriminate by viewpoint.

*OSU Student Alliance v. Ray*, 699 F.3d 1053, 1062 (9th Cir. 2012).

A claim based on viewpoint discrimination requires proof that Defendant discriminated against Plaintiff's speech *because of* Plaintiff's viewpoint. *Pahls,* 718 F.3d at 1230 (discussing *mens rea* requirement for First Amendment viewpoint discrimination claim).

**B.    The November 4, 2009 Incident**

**1.    Plaintiff Has Made Out a Submissible Case that His First Amendment Rights Were Violated  by His Ejection from the November 4, 2009 Board Meeting**

The Court's analysis of the events of November 4, 2009 is facilitated by the existence of a video recording of the Board's meeting.  [Ex. B] The video shows

Plaintiff approaching, and then standing behind a podium.  He is neatly dressed in a dress shirt and necktie.  He begins speaking to the Board in a measured, calm manner.  He employs the rhetorical device of addressing remarks to individual Board members or administrators, in each case identifying a serious issue and challenging the person addressed to engage the issue.  This device draws an immediate objection from Board member Lucero, who declares that it is inappropriate to address remarks to individual Board members.  Plaintiff continues speaking in a calm, measured manner, employing the same rhetorical device. He is interrupted by Board member Griego, who directs him to refrain from addressing individual Board members.  Plaintiff continues to address individual Board members and administrators.  When Plaintiff begins to address remarks to APS administrator Linda Sink,[2] Board member Lucero cuts off Plaintiff, declaring that "we have crossed the line." Defendant tells Plaintiff that the Board has made it very clear that Plaintiff is not to address personnel issues, and that if Plaintiff persists in addressing personnel issues he can leave.  In a low voice, Plaintiff denies having addressed personnel issues.   Defendant immediately reacts, telling Plaintiff in a peremptory tone of voice that  "You can leave.  You're done. You are done. You are done. You are done."  Plaintiff is escorted from the board room by security personnel.

---

[2] In his Motion for Summary Judgment, Defendant represents that Linda Sink was not present during Plaintiff's remarks. [Doc. 79 at 14]  If this was in fact the case, the fact that Plaintiff addressed remarks to a person who was absent is a further indication that Plaintiff was employing a rhetorical device.

There is no evidence that as of November 4, 2009, the Board had an established practice or policy prohibiting a speaker from addressing remarks to individual Board members.  *Cf. Featherstone v. Columbus City Sch. Dist. Bd. of Educ.*, 92 Fed. Appx. 279, 281 (6th Cir. 2004) (noting that defendant school board had briefly adopted a policy whereby speakers were directed to refrain from mentioning members of the board or others by name, but that defendant had rescinded policy after a court entered a TRO prohibiting its enforcement).  In any event, Defendant did not expressly rely on a rule against addressing individual Board members in ejecting Plaintiff. The sole rationale actually invoked by Defendant as justification for ejecting Plaintiff from the Board meeting was a prohibition on the discussion of "personnel matters."[3]  The video recording establishes that during the November 4, 2009 Board meeting, Plaintiff addressed the handling of whistleblower complaints, resistance to an internal audit to uncover mismanagement, the possible cover-up of criminal misconduct, and APS finances—all matters of legitimate public concern.   Based on a review of the video recording of Plaintiff's remarks, the Court concludes that a jury could find that Defendant could not reasonably have understood  Plaintiff's remarks about these matters to be comments on "personnel matters."

In his November 5, 2009 letter, Defendant relied on a different rationale in asserting for the first time that Plaintiff had engaged in "personal attacks" during the November 4, 2009 Board meeting.  [Docs. 57-4]  Based on its review of the video

---

[3] The apparent rationale for excepting "personnel matters" from the public comment segment is NMSA 1978, § 22-5-14(5) which commits to the superintendent authority to "employ, fix the salaries of, assign, terminate or discharge all employees of the school district."

recording of the November 4, 2009 meeting, the Court concludes that a reasonable jury could find that Plaintiff did not engage in personal attacks, but rather was challenging the Board members and administrators to address serious issues within APS.  Further, a jury could infer from the fact that Defendant emphasized a new, personal attacks rationale in his November 5, 2009 letter that he himself had doubts about the validity of the personnel matters rationale he had invoked at the Board meeting. Given that Defendant did not mention the personal attacks rationale in the course of ejecting Plaintiff from the November 4, 2009 Board meeting, it will be for the jury to decide whether Defendant's belated reliance on this rationale is credible.

The Court concludes that there is a view of the evidence by which a reasonable jury could find that both of the rationales expressly invoked by Defendant as justification for ejecting Plaintiff lacked factual support— *i.e.*, that Plaintiff did not discuss personnel matters or engage in personal attacks on Board members or APS administrators—and that Defendant could not reasonably have believed that Plaintiff engaged in either of these actions.   Plaintiff has established genuine issues of material fact as to the first prong of qualified immunity analysis:  whether he was ejected from the November 4, 2009 without constitutionally adequate justification.

### 2.    Plaintiff's Rights Were Clearly Established.

Turning to the second prong of qualified immunity analysis, the Court concludes that the law was clearly established.  "In general, '[t]he law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains.'"

*Robbin v. City of Santa Fe*, 583 Fed. Appx. 858, 864 (10th Cir. 2014) (quoting *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003)).  There has been some lack of clarity in Supreme Court precedent distinguishing limited public fora and designated public fora.  *Doe v. City of Albuquerque*, 667 F.3d 1111, 1128  (10th Cir. 2012).  If the public comment segment of Board meetings was governed by the standards applicable to designated public fora, then restrictions on Plaintiff's speech would have had to have been content neutral, have served a significant government interest, have been narrowly tailored to advance that interest, and have left open ample alternative channels of communication.  *Shero*, 510 F.3d at 1203.  If, as the Court has determined, the public comment segment of Board meetings is a limited public forum, then restrictions on Plaintiff's speech were required to have been (1) viewpoint neutral and (2) reasonable, given the purpose of the public comment segment. The important point for purposes of qualified immunity is that neither standard authorizes a speaker to be ejected for a non-existent reason.  Further, it was clearly established  that the government bears the burden of justifying a restriction on protected speech.  *Playboy Entertainment*, 529 U.S. at 816. The Court concludes that any reasonable officer in Defendant's position would have recognized that he could not eject Plaintiff for a reason that was not supported by the facts known to him.

## C.      The September 1, 2010 "Banning Letter"

The second instance of conduct in which Defendant was personally involved is in drafting and issuing the September 1, 2010 letter.  [Doc. 22-1]

As discussed above, Plaintiff has the right to attend Board meetings to receive information and to speak during the public comment segment.  In his September 1, 2010 letter,  Defendant notified Plaintiff that Plaintiff is no longer "privileged" to attend Board meetings.   The September 1, 2010 letter essentially cut off Plaintiff's right to attend meetings and to receive and communicate information.[4]  Further, the letter provides that if Plaintiff wishes to have his "privilege" reinstated, he must submit to unspecified rules of decorum and convince Defendants Esquivel and Tellez that he is "sincere" in adhering to those rules.

The first reason for banning Plaintiff from subsequent Board meetings cited by Defendant is "a number of ongoing and escalating events involving yourself at various meetings of the APS Board of Education over the past year and recently on August 25 . . . ." [Doc. 22-1 at 9]  A potentially serious problem with Defendant's reliance on this rationale is that it incorporates Plaintiff's conduct leading up to his ejection from the November 4, 2009 Board meeting.  As explained above, there is a view of  the evidence by which a jury could find that Defendant ejected Plaintiff from the November 4, 2009 Board meeting without constitutionally adequate justification.  Under this view of the evidence,  Defendant's reliance on the earlier incident as grounds for banning Plaintiff from future Board meetings compounds his initial violation of Plaintiff's constitutional rights.

---

[4] Defendant Esquivel asserts that the September 1, 2010 letter was merely intended by him to "create a dialogue." [Doc. 79 at 7, ¶ 22]  He concedes that even under this view of the letter he intended to "temporarily restrict [Plaintiff's] attendance at Board meetings at APS headquarters."

Defendant's reliance on Plaintiff's behavior at the August 25, 2010 committee meeting is similarly problematic.  As noted above, the test applicable to a limited public forum comprises two prongs:  any restriction on speech must be (1) viewpoint neutral and (2) reasonable given the purposes of the forum.  Under the second prong of the test, Defendant's understanding that Plaintiff had engaged in conduct justifying his ejection from August 25, 2010 meeting need not be right, but it must have been reasonable.  There is a noticeable absence of evidence as to what information Defendant had about the events of August 25, 2010.[5]  Given the allocation of the burden of persuasion on justification to the governmental defendant, a reasonable jury could find that Defendant has not shown that his reliance on Plaintiff's alleged misconduct at the August 25, 2010 meeting was objectively reasonable.[6]

The third ground for banning Plaintiff from future meetings cited by Defendant in his September 1, 2010 letter was "concerns for the safety of not only board members but of APS employees, some of whom have expressed concerns that they do not feel safe with you attending meetings."  The Court does not doubt that at least some Defendants and APS employees genuinely are concerned that Plaintiff presents a risk to their physical safety.  But to justify the exclusion of Plaintiff from a limited public forum on grounds of safety, Defendants' apprehension of harm must be reasonable, not merely subjectively genuine.   The Court has carefully considered Defendant's deposition

---

[5] In his reply, Defendant concedes that "Plaintiff *may be* correct that Defendant Esquivel was present" at the August 25, 2010 Audit Committee meeting. [Doc. 105 at 6 (emphasis added)].
[6] Because Defendant bears the burden of persuasion on the issue of justification, his evidence of justification must be "so powerful that no reasonable jury would be free to disbelieve it. Anything else should result in denial of summary judgment."  *Moore's*, *supra*.

testimony as it bears on safety concerns.  When pressed by Plaintiff's counsel, Defendant proved to be noticeably short on objective facts. [Doc. 79-5 at 3 ("I'm telling you my hunch was sufficient enough to feel that he posed this threat.")] The Court concludes that a reasonable jury could reject Defendant's testimony as lacking an objective factual basis for the safety concerns cited in the September 1, 2010 letter.[7]

To summarize, a reasonable jury could find that one or more of the rationales relied upon by Defendant were not supported by the facts, and that Defendant knew or had reason to know that that these rationales lacked objective factual support.  A jury could find that Defendant's reliance on those rationales to exclude Plaintiff from future Board meetings was not reasonable.

Alternatively, the Court concludes that that a reasonable jury could find that Defendant issued the September 1, 2010 letter out of frustration with Plaintiff for his unrelenting belaboring of the Board about his pet issues and Plaintiff's personal criticisms of Defendant.   Defendant's November 5, 2009 letter refers to "personal attacks,"  "unfairly questioning the integrity of me and my colleagues," "actions that are disrespectful toward elected officials,"  "personal attacks on me and my colleagues," and "postings on your blog." During his deposition, Defendant characterized postings on Plaintiff's blog as "vindictive, one-sided, unfair," and "intentionally hurtful." He suggested that Plaintiff's blogs had "crossed the line," expressing facts with "malice" and to "defame."   He referred to Plaintiff as "extremely rude and unreasonable." Defendant

---

[7] As noted previously, because Defendant bears the burden of persuasion on the issue of justification, his evidence of justification must be "so powerful that no reasonable jury would be free to disbelieve it. Anything else should result in denial of summary judgment." *Moore's*, *supra*.

is aware that Plaintiff has called him an "unethical lawyer," and has stated that Defendant

"lacks character." As noted above, there is a view of the evidence by which a jury could

find that Defendant knew or should have known that the rationales for excluding

Plaintiff from future meetings lacked objective factual support. On this evidence of

Defendant's animosity toward the substance of Plaintiff's speech[8] and the arguable

absence of an objective basis for excluding Plaintiff, a reasonable jury could find that the

justifications offered by Defendant for banning Plaintiff were pretexts masking viewpoint

discrimination, and that Defendant targeted Plaintiff precisely "*because of*" Plaintiff's

unwelcome criticism of the Board's administration of APS and of Defendant, personally.

*Pahls*, 718 F.3d at 1230.

Defendant argues that he is entitled to qualified immunity because he relied upon

the advice of Board counsel. [Doc. 79 at 22-23 (discussing "extraordinary

circumstances" exception to the general rule that violation of a clearly established right

defeats qualified immunity)]. The Court has considered the factors set out in *V-1 Oil Co.

v. Wyoming*, 902 F.2d 1482, 1489 (10th Cir.1990). The present case is immediately

distinguishable from *V-1 Oil* by the fact that Defendant, unlike the defendant in *V-1 Oil*,

is an attorney who is also a recognized expert on First Amendment law. [Doc. 95-4 at 4;

APS Website, Martin R. Esquivel biography, http://www.aps.edu/about-us/board/board-

---

[8] This point distinguishes *McCook v. Springer School District*, 44 Fed. Appx. 896, 909 (10th Cir. 2002), an
unpublished disposition cited by Defendant for the proposition that "dislike is not an illegal motive." [Doc. 105 at 7]
That observation may be true in cases of "generic" dislike, but its applicability is questionable when the defendant's
dislike arises in response to the plaintiff's protected speech. This point was noted by the Seventh Circuit Court of
Appeals in *Rasovich v. Wade*, 850 F.2d 1180, 1193 (7th Cir.1988), the case cited by our Court of Appeals in
*McCook*. Bad feeling can be relevant to motive where, as here, animosity between the parties is due to "behavior
that is itself protected by the first amendment." *Id.* at 1193. *See also Wackett v. City of Beaver Dam, Wis.*, 642 F.3d
578, 582 (7th Cir. 2011) ("Only that dislike that stemmed from [plaintiff's] protected speech, though, would be
actionable.").

members/martin-esquivel (last visited on February 6, 2015)].  Given Defendant's

undisputed preeminence in First Amendment law, a jury is likely to take a skeptic's view

of Defendant's advice-of-counsel defense.  A jury might reason that it was more likely

that knowledge of the First Amendment implications of the banning letter flowed from

Defendant to the Board's attorney, rather than the other way round.   In view of

Defendant's own First Amendment expertise, it would take an extremely thorough,

closely-reasoned analysis by the Board's attorney to persuade a jury that Defendant's

reliance upon the advice of counsel prevented Defendant from realizing that the

September 1, 2010 letter violated Plaintiff's First Amendment rights.  Defendant has not

presented such evidence.  In his deposition, the Board's attorney testified that he asked

his partner to do "a little bit of research." [Doc. 79-11 at 3] This research produced "a

couple of cases that confirmed that [Defendant's] position was correct." [Doc. 79-11 at 3]

The Court concludes that this limited evidence leaves a genuine dispute of material fact

as to Defendant's reasonable reliance on advice of counsel.[9]

### D.    Analysis of Counts I-VI

Count I of the Amended Complaint asserts a claim that the September 1, 2010

letter constitutes an invalid prior restraint.  Defendant's sole argument for dismissal of

this Count is that the letter is not a prior restraint because it is content neutral. [Doc. 79 at

20-22; Doc. 105 at 6]  Defendant is correct that a claim of prior restraint requires a

---

[9] Defendant bears the burden of persuasion as to the existence of extraordinary circumstances.  *Mimics, Inc. v. Village of Angel Fire*,  394 F.3d 836, 842 (10th Cir. 2005).   Because Defendant bears the burden of persuasion on the issue of extraordinary circumstances, his evidence of justification must be "so powerful that no reasonable jury would be free to disbelieve it. Anything else should result in denial of summary judgment."  *Moore's*, *supra*.

content-based restriction on speech. *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 42 (10th Cir. 2013). However, Defendant's argument is disposed of by the Court's conclusion that a jury could reject the reasons proffered by Defendant as factually unsupported and find that the September 1, 2010 letter was motivated by Defendant's hostility to Plaintiff's harsh criticism of the Board and Defendant, personally. Under this view of the record, the letter was issued precisely because of the highly critical content of Plaintiff's speech. The Court will deny summary judgment as to Count I.

Count II of the Amended Complaint asserts a claim that Defendant violated Plaintiff's First Amendment rights by excluding Plaintiff from Board meetings. The Court's analysis under Sections B and C, supra, requires the Court to deny summary judgment as to Count II.

Count III of the Amended Complaint asserts a claim that Defendant violated Plaintiff's First Amendment rights by retaliating against him because of the content of his speech. To establish a claim of retaliation, Plaintiff must demonstrate that (1) he engaged in protected speech, (2) Defendant's actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected speech and (3) the Defendant's adverse action was substantially motivated as a response to Plaintiff's protected speech. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). In analyzing this claim, the Court distinguishes between Plaintiff's speech at Board meetings and Plaintiff's blog speech. Excluding a plaintiff from a public forum for speech made in that forum is a direct First Amendment violation, and there is no need to complicate the analysis by injecting the additional element of "chilling." Thus, to the

extent that Defendant ejected or banned Plaintiff for speech during Board meetings, Count III is duplicative of Count I and II.  Plaintiff's blog speech is distinguishable, however, because it is not subject to direct regulation by Defendant or the Board.  Thus, to silence or restrict Plaintiff's blog speech, Defendant would have been required to act indirectly—*i.e.*, by threatening some interest of sufficient importance to Plaintiff that the threat to that interest would persuade Plaintiff to moderate his blog speech.  Here, Plaintiff's interest in speaking at Board meetings is an interest over which Defendant exercised direct control.[10]

Other than Defendant's opinion that Plaintiff's blogs were malicious and defamatory, there is no evidence that Plaintiff's blog speech falls within a category of unprotected speech.  Defendant has not provided the Court with a representative sample of Plaintiff's allegedly defamatory blogs. The Court concludes that  a reasonable jury could discount or reject Defendant's characterization of Plaintiff's blog speech and find that Plaintiff's criticisms of the Board and Defendant posted on his blog is protected speech, satisfying the first element of a retaliation claim.  The Court has previously concluded that there is a view of the evidence by which a jury could find that the September 1, 2010 letter was motivated by Defendant's hostility to Plaintiff's speech, including at least in part, his blog speech, satisfying the third element of a retaliation claim.  The remaining question is whether Plaintiff's evidence would allow a jury to find in his favor on the second prong of his retaliation claim:  whether Plaintiff was subjected

---

[10] The Court of Appeals has noted that "First Amendment retaliation claims are generally brought in the public employment context."  *Perez v. Ellington*,  421 F.3d 1128, 1132 (10th Cir. 2005).  In such cases the plaintiff's public employment is the interest that is threatened in order to chill the plaintiff's exercise of First Amendment rights.

to conduct that would chill a person of ordinary firmness.  Our Tenth Circuit Court of

Appeals applies an objective standard in evaluating the chilling effect of  retaliatory

conduct.  *Eaton v. Meneley*,  379 F.3d 949, 954 (10th Cir. 2004).   To satisfy this

standard,  Plaintiff must demonstrate something more than a "trivial or de minimis

injury." *Id.* at 955 (internal quotation marks omitted).  Plaintiff testified to his own

awareness that his blog reaches a limited audience.  The September 1, 2010 letter

indefinitely excluded Plaintiff from Board meetings, where his speech would be heard

not only by Board members and APS administrators, but by other attendees and by those

persons viewing Board meetings over the internet.  The Court concludes that a reasonable

jury could find that Plaintiff's loss of access to his primary forum was more than a

"trivial or de minimis injury."  *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002)

("[U]nless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim

should go to the jury."); *see also Lewis v. Clark*,  No. 14-8013,  2014 WL 4197340, *10

(10th Cir. Aug. 26, 2014) (unpublished decision) (holding that denial of access to law

library in response to inmate's filing of  administrative grievances sufficiently serious to

chill a person of ordinary firmness from continuing to file grievances).

     Count IV of the Amended Complaint asserts a claim that Defendant issued the

September 1, 2010 letter without affording Plaintiff procedural due process.  In his

Response, Plaintiff has clarified the basis of this claim, stating that it is based on the

alleged denial of a "post deprivation remedy."  [Doc. 93 at 18]  As Defendant correctly

observes, "[a] person alleging that he 'has been deprived of his right to procedural due

process' must prove two elements:  that he possessed a constitutionally protected liberty

or property 'interest such that the due process protections were applicable,' and that he

was not 'afforded an appropriate level of process.'" [Doc. 79 at 26 (quoting *Zwygart v.*

*Bd. of Cnty. Comm'rs of Jefferson Cnty., Kan.*, 483 F.3d 1086 (10th Cir. 2007))].   As

discussed above, school board meetings are opened to the public by operation of New

Mexico law.  "For state law to create a liberty interest, it must establish substantive

predicates to govern official decision making and mandate an outcome when relevant

criteria have been met." *Elwell v. Byers*, 699 F.3d 1208, 1214 (10th Cir. 2012). NMSA

1978, § 10-15-1(A) provides that "[a]ll meetings of any public body except the legislature

and the courts *shall be public meetings*, and *all persons so desiring shall be permitted to*

*attend and listen to the deliberations and proceedings*."[11] (Emphasis added).  The Court

will assume, without deciding, that this provision creates a liberty interest.  NMSA 1978,

§ 10-15-3(B) provides a private right to enforce the provisions of the NMOMA.  The

aggrieved individual must first provide written notice of the claimed violation to the

public body.   If the public body denies, or does not act on the claim within fifteen days

of receiving the notice, the aggrieved individual may bring an action in the district court

to enforce the NMOMA.  Plaintiff's assertion that "Defendants failed to provide

[Plaintiff] with a 'meaningful post deprivation remedy'. . ." ignores his own failure to

take advantage of the procedure provided by New Mexico law.  Plaintiff was not

deprived of an adequate post-deprivation remedy;  rather, he simply failed to utilize what

---

[11] The Court recognizes that the NMOMA does not guarantee a right to speak at public meetings.  Presumably, the Board would have attempted to justify its exclusion of Plaintiff by citing the reasons given in the September 1, 2010 letter, and Plaintiff would have countered with evidence that the reasons given by the Board were pretexts, and that the actual reason he was ejected was for engaging in protected speech.  Thus, in the course of vindicating his right to attend Board meetings, Plaintiff would have had the opportunity to vindicate his right to speak.

appears to be an entirely adequate procedure—a formal, adversary proceeding in a court of law.[12]

Count V of the Amended Complaint asserts a claim that the Board's policies prohibiting (1) comments on "personnel matters" and (2) "personal attacks" are unconstitutional. Here, Defendant is sued only in his individual capacity. "Just as a plaintiff cannot sue a defendant in his official capacity for damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.*, his official capacity." *Cmty. Mental Health Serv. of Belmont v. Mental Health and Recovery Bd. Serving Belmont, Harrison & Monroe Counties*, 150 Fed. Appx. 389, 401(6th Cir. 2005). "Courts have concluded that 'there is no basis for suing a government official for declaratory and injunctive relief in his or her individual or personal capacity." *BEG Investments, LLC v. Alberti*, __F. Supp. 2d __, __, 2014 WL 1280261 * 7(D. D.C. 2014). Defendant in his individual capacity is not subject to liability under Count V.

Count VI asserts a right to declaratory and injunctive relief. This is not a true claim, but rather merely a request for additional forms of relief predicated on the violations asserted in Counts I-V. *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 558 (S.D. N.Y. 2014) ("But '[d]eclaratory judgments and injunctions are remedies, not causes of action.'"). As noted in the discussion of Count V, injunctive and declaratory is not available against Defendant, who is sued in his individual capacity.

---

[12] The NMOMA clearly contemplates that the aggrieved individual bringing an enforcement action will be represented by an attorney, if he so chooses. NMSA 1978, 10-15-3(C) (providing for an award of costs and attorney's fees to a person who is successful in bringing an action to enforce the NMOMA).

### E.      State Law Claims

Counts VII and VIII are claims based upon the New Mexico Inspection of Public Records Act, NMSA 1978, §§ 14-2-1, *et seq.*   Defendant asserts that "[t]here have been no allegations that Defendant Esquivel had personal involvement in Plaintiff's state law claims under IPRA, thus he is entitled to summary judgment on Count VII and VIII." [Doc. 79 at 2]  In his Response, Plaintiff does not dispute Defendant's entitlement to summary judgment on these state-law claims.   The Court will grant Defendant's motion for summary judgment as to these claims.

## CONCLUSION

For the reasons set out above, the Court **grants** Defendant's Motion for Summary Judgment as to Counts IV through  VIII.  The Court **denies** Defendant's Motion for Summary Judgment as to Counts I-III.

**WHEREFORE, IT HEREBY IS ORDERED** that Defendant's Motion for Summary Judgment on Counts I-VIII of Plaintiff's Complaint [Doc. 79] is **granted in part** and **denied in part**.

**So ordered this 6th day of February, 2015.**


_____
M. CHRISTINA ARMIJO
Chief United States District Judge