IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLES "CHED" MACQUIGG,

        Plaintiff,

vs.                                                         Civ. No. 12-1137 MCA/KBM

THE ALBUQUERQUE PUBLIC
SCHOOLS BOARD OF EDUCATION,
*et al.*,
        Defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

This case is before the Court upon Plaintiff's Motion for Partial Summary Judgment [Doc. 82] Plaintiff seeks summary judgment as to six discrete issues. [Doc. 82 at 1] The Court has considered the written submissions of the parties, the record in this case, and the applicable law, and is otherwise fully advised. The Court's Memorandum Opinion and Order [Doc. 145] is hereby withdrawn and this Amended Memorandum Opinion and Order substituted in its Place.

    **1.**     **Summary Judgment Standards**

Fed. R. Civ. P. 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that

1

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  As our Court of Appeals has succinctly stated:

> A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented.

A*damson v. Multi Community Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.  *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).  It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations.  *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).  There is an additional principle that must be borne in mind:

> When the [summary judgment] movant bears the burden of persuasion at trial, the movant must produce evidence that would conclusively support its right to a judgment after trial should the nonmovant fail to rebut the evidence.  In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment.

11 *Moore's Federal Practice* §56.40[1][c] (3d ed. 2013).

    **2.**    **Background**

Defendant APS Board of Education ("the Board") comprises seven elected members, who exercise the powers conferred by NMSA 1978, § 22-5-4.  At the times material to this action, Defendant Esquivel was President of the Board.

Plaintiff is a former APS teacher.  He retired from APS in 2004.  During his employment with APS, Plaintiff was exposed to a "values based education curriculum"

known as Character Counts.  He believes that individual Board members and APS administrators are shirking their responsibilities to APS students by not publicly committing themselves to serve as Character Counts role models.  Beginning in 2006, Plaintiff has maintained a blog site, *Diogenes' Six*.  Between August 2006 and September 2010, Plaintiff posted 4,200 blog entries, many of which address the administration of APS.

     The Board holds regular bi-weekly meetings, which are open to the public.  The meetings generally are held in the Board room at APS's main office in Uptown Albuquerque. The meetings are broadcast live over the internet and may be viewed at APS's website.  By practice and policy, the Board sets aside up to thirty minutes of each meeting for public comment. Attendees typically are allotted two minutes for their comments.  Plaintiff has attended numerous meetings of the Board and its committees. On between fifty and one-hundred occasions, Plaintiff has spoken during the public comment segment of Board meetings. The Board generally treats Plaintiff courteously, listening to his remarks without interfering or interrupting him.  However, on certain occasions he has been ejected from meetings of the Board or its committees.

     On November 4, 2009, Plaintiff attended a meeting of the Board.  Plaintiff was ejected from the meeting at the direction of Defendant.  On November 5, 2009, Defendant wrote Plaintiff elaborating on why Plaintiff had been ejected from the November 4, 2009 meeting, and warning Plaintiff that if he ignored the Board's rules of decorum at future meetings, he would be asked to leave or would be removed.

On August 19, 2010, APS hosted a gubernatorial debate at the performing arts center at Eldorado High School. Due to the size of the auditorium, seating was limited, and access to the debate was by invitation only. Plaintiff initially sought a press pass for the debate. Plaintiff was denied a pass. He thereafter acquired a ticket issued to an invited guest. When he presented the ticket, he was denied admission.

On August 25, 2010, Defendant Robbins ejected Plaintiff from a meeting of the Audit Committee. Robbins believed that Plaintiff or Plaintiff's associate, Mark Bralley, had recorded a portion of the meeting in violation of Robbins' instructions to attendees.

On September 1, 2010, Defendants Esquivel and Tellez sent Plaintiff a letter informing Plaintiff that "we are revoking your privilege to attend meetings of the Board of Education. This revocation of your privilege to attend meetings is based on concerns for the safety of not only board members but of APS employees, some of whom have expressed concerns that they do not feel safe with you attending meetings" [Doc. 22-1 at 9]. The letter further stated that "[i]f you would like your attendance privilege reinstated, then you must make arrangements to meet with me and Deputy Chief Tellez to discuss acceptable decorum from you and to clarify processes involving interaction between members of the public and the APS Board of Education."

Plaintiff has not met with Defendants Esquivel and Tellez, and the Board has not reinstated Plaintiff's "attendance privilege."

### 3. First Amendment Standards

Whether Plaintiff's First Amendment rights were violated turns on the answers to three questions: (1) is Plaintiff's speech protected speech? (2) what type of the forum is a

4

Board meeting? and (3) do the justifications for restricting speech proffered by Defendant satisfy the First Amendment standard applicable to the type of forum in question? *Summum v. Callaghan*, 130 F.3d 906, 913 (10th Cir. 1997).

There is no serious question that the speech that Plaintiff engages in at Board meetings is protected speech. "[E]xcept for certain narrow categories deemed unworthy of full First Amendment protection—such as obscenity, 'fighting words' and libel—all speech is protected by the first Amendment." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282-83 (3d Cir. 2004).

The New Mexico Legislature requires public meetings to be open so that the public may "attend and listen." NMSA 1978, § 10-15-1. The Court concludes that by operation of § 10-15-1, Board meetings, with the exception of those portions permitted or required to be closed by New Mexico law, are limited public fora for the *receipt* of information about the Board's business.[1] However, the Legislature has not designated public meetings as public fora for speech or debate by attendees. *Mesa v. White*, 197 F.3d 1041, 1046 (10th Cir. 1999).

Apart from the NMOMA, the Board itself, by practice and policy,[2] generally sets aside a thirty minute segment of each meeting for public comment related to the administration of APS. The Court concludes that this thirty minute segment of each

---

[1] The example of a public library convincingly demonstrates that opening a forum for the receipt of information does necessarily mean that the forum has been opened for all First Amendment activities. *Doe v. City of Albuquerque*, 667 F.3d 1111, 1128-29 (10th Cir. 2012) (recognizing that public libraries are not been designated as fora for speech or debate).

[2] "The Board of Education shall provide an opportunity for members of the public to comment regarding their concerns, complaints or commendations during a public forum at regular meetings of the Board of Education. . . ." [Doc. 82-1]

Board meeting is a limited public forum for speech by members of the public relating to the administration of APS. *Green v. Nocciero*, 676 F.3d 748, 753 (8th Cir. 2012) (observing that school board meeting was "what has variously been called a nonpublic or a limited public forum"); *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 759 (5th Cir. 2010) (observing that "[t]he Board meeting here—and the comment session in particular—is a limited public forum"); *Featherstone v. Columbus City Sch. Dist. Bd. of Educ.*, 92 Fed. Appx. 279, 282 (6th Cir. 2004) ("A school board meeting, when opened to the public, is a limited public forum for discussion of subjects relating to the operation of the schools."); *Jones v. Bay Shore Union Free Sch. Dist.*, 947 F. Supp. 2d. 270, 278 (E.D. N.Y. 2013) ("Typically, school board meetings are limited public fora."); *Garrett v. City of Seattle*, No. C10-00094 MJP, 2010WL4236946 *3 (W.D. Wash. Oct. 20, 2010) ("The school board meeting was a limited public forum."); *Liggins v. Clarke County Sch. Bd.*, Civil Action No. 5:09CV00077, 2010WL3664054 *7 (W.D. Va. Sept. 17, 2010) ([I]t is clear from the record that the School Board's April 14, 2008 meeting constituted a limited public forum."); *Caldwell v. Roseville Joint Union High Sch. Dist.*, No. CIV. S-05-0061 FCD JFM, 2007 WL 2669545 *15 (E.D. Cal. Sept 7, 2007) (concluding that "the California Legislature has designated school board meetings as limited public fora, i.e., open to the public in general, but limited to comments related to the school board's subject matter"); *Moore v. Asbury Park Bd. of Educ.*, No. Civ.A.05-2971 MLC, 2005WL2033687 *9 (D. N.J. Aug.23, 2005) ("The parties agree that the forum here, the Board meeting, is a limited public forum.").

Given the nature of the public comment segment of Board meetings as a limited public forum, the Board may impose restrictions on attendees' speech if the restrictions are (1) viewpoint neutral and (2) reasonable in light of the purpose served by meetings of the Board. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1202-03 (10th Cir. 2007). "Reasonableness" in the First Amendment context is not "the anemic simulacrum of a constraint on governmental power found in the "Due Process Clause's 'rational basis' test." *Holloman v. Harland*, 370 F.3d 1252, 1271 (11th Cir. 2004). "The 'reasonableness' requirement for restrictions on speech in a nonpublic forum 'requires more of a showing than does the traditional rational basis test. . . .There must be evidence in the record to support a determination that the restriction is reasonable." *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 966-67 (9th Cir. 2002) (citations omitted). "Regulation of nonpublic forums requires some level of heightened scrutiny. . . . Although the Court has never named this level of scrutiny, in requiring a connection between the restriction and the purpose of the forum, *Perry* appears to require more scrutiny that simple rational basis, which will sustain a viewpoint neutral law that serves *any* legitimate objective." *Wisconsin Educ. Assn. v. Walker*, 705 F.3d 640, 647 n.3 (7th Cir. 2013)(citing *Perry Educ. Assn. v. Perry Local Educ. Assn.*, 460 U.S. 37, 49 (1983)) (citations omitted).

    **4.**    **Issue No. 1**

Plaintiff seeks summary judgment on whether the Board's policy prohibiting discussion of "personnel issues" violates the First Amendment both facially, and as applied to Plaintiff. There is no dispute that the Board has a practice of prohibiting

attendees from commenting on personnel issues during the public comment segment of Board meetings. [Doc. 87 at 10]

The Board has not defined "personnel issues." Since a principal rationale for the restriction is that personnel matters are not with Board's purview, the Court has looked to NMSA 1978, § 22-5-14(B)(3), which confers on local superintendents, rather than boards of education, the power to "employ, fix the salaries of, assign, terminate or discharge all employees of the school district" to give content to the term personnel issues.[3]  Construed in the light of § 22-5-14(B)(3), the Board's personnel issues policy necessarily discriminates against speech on the basis of its content,[4] but not necessarily on the basis of the speaker's viewpoint.

As a content-based restriction on speech in a limited public forum, the personnel issues policy must be reasonable, given the purpose of the public comments segment. Defendants assert that the Board's policy prohibiting comments on personnel issues is necessary to (1) confine comments to matters within the Board's purview, (2) prevent disruptive conduct or speech, (3) maintain decorum, and (4) assure that Board meetings are conducted in an orderly fashion.  [Doc. 8 at 10] The Court concludes as a matter of law that given the Board's limited direct authority over personnel issues, the prohibition on the discussion of personnel issues furthers a legitimate interest of the Board in

---

[3] The rationale that personnel issues are not within the Board's purview does not apply to the superintendent himself, as he is employed by the Board, NMSA 1978, § 22-5-4(B); *Stanley v. Raton Bd. of Educ.*, 117 N.M. 717 (1994).

[4] There is a "chicken or the egg" character to deciding whether a restriction on speech is part of the definition of the forum versus a restriction imposed only after the forum has been defined. *United States v. Kokinda*, 497 U.S. 720, 750-51 (1990) (Brennan, J., dissenting). Evidence that the personnel issues restriction is not part of the definition of the forum is found in BEF4, the written Board Policy establishing the public comment segment. BEF4 does not include an exception for "personnel issues."

confining matters addressed during the public comment segment to matters within the Board's purview.  Accordingly, with the exception of comments on the superintendent's performance, the personnel issues policy operates as a reasonable, viewpoint-neutral restriction on speech, and, therefore, is not facially invalid.  *See Breslin v. Dickinson Twp.*, 2012 WL 7177278 *21 (M.D. Pa. 2012).

Plaintiff also seeks a declaration that the Board's personnel policy was applied to him unconstitutionally.  Defendant Esquivel is the Board member who invoked the personnel policy in ejecting Plaintiff from the November 4, 2009 Board meeting. The video recording of the November 4, 2009 meeting establishes that prior to his ejection Plaintiff addressed the handling of whistleblower complaints, resistance to an internal audit to uncover mismanagement, the possible cover-up of criminal misconduct, and APS finances—all matters of legitimate public concern, and none of which plausibly constitute personnel issues as defined by § 22-5-14(B)(3).  The Court concludes that a reasonable jury could find that Defendant Esquivel could not reasonably have understood Plaintiff to have violated the  Board's personnel issues policy and that he simply seized on the personnel policy as an excuse for ejecting Plaintiff.  In other words, a reasonable jury could find that Defendant Esquivel violated the Board's personnel policy by applying it to circumstances to which it clearly did not apply.  The Court cannot determine on the record before it whether Defendant Esquivel's arguably arbitrary and capricious invocation of the personnel issues policy should be attributed to the Board under principles of municipal liability.  *See Travis v. Park City Police Dep't*, 277 Fed. Appx. 829, 833 (10th Cir. 2008) ("[U]nder our precedents a municipality can be held liable for

9

the unconstitutional actions of its employees only when those employees act *pursuant to city policy or custom.*" (Emphasis added)); *see also Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002) (observing that entire county commission, not single commissioner, possessed final policymaking authority). The Court will deny Plaintiff's motion without prejudice with respect to the issue of the unconstitutionality of Board's personnel issues policy as applied to Plaintiff.

Defendant Esquivel is sued solely in his individual capacity. "Courts have concluded that 'there is no basis for suing a government official for declaratory and injunctive relief in his or her individual or personal capacity.'" *BEG Investments, LLC v. Alberti*, __F. Supp. 2d__, __, 2014 WL 1280261 *7 (D.D.C. 2014).

The Court denies summary judgment as to Issue 1.

**Issue No. 2**

The Board has adopted the following policy:

Personal attacks upon Board of Education members, district personnel, or other persons in attendance or absent[,] by individuals who address the Board of Education shall be prohibited and may be justification for removal from the meeting.

The Court concludes that on its face the "personal attacks" policy discriminates against speech on the basis of content by discriminating between attacks—unfavorable or critical comments—and neutral or favorable comments about a given individual. The more difficult question is whether the personal attacks policy is viewpoint-based. In an analogous context, the Honorable James O. Browning has concluded that a village governing body's "no negative mention" policy is viewpoint–based "because it allows

10

praise or neutral comment, but not criticism or disapproval. . . ."  *Griffin v. Bryant*,  30 F. Supp. 3d 1139, 1181 (D.N.M. 2014);  *accord Moore v. Asbury Park Bd. of Educ.*, 2005 WL 2033687 *11-13 (D.N.J. 2005) (collecting cases).  Judge Browning's reasoning has considerable intuitive appeal.

Arguably, Judge Browning's reasoning  conflicts with Justice O'Connor's plurality opinion in *Boos v. Barry*, 485 U.S. 312 (1988).  At issue in *Boos* was a federal statute making it unlawful within the District of Columbia to display signs disparaging the policies of a foreign government within 500 feet of its embassy.  Justice O'Connor, joined by Justices Steven and Scalia and concurring justices Brennan and Marshall, held that the statute was content based because it singled out speech critical of foreign governments.  485 U.S. at 318-19.  Justice O'Connor, joined by Justices Stevens and Scalia, expressly held that the statute was viewpoint neutral, because it "determines which viewpoint is acceptable in a neutral fashion by looking to the policies of foreign governments."[5]  As once commentator has observed,  "[t]his is a crabbed definition of viewpoint, to say the least.  Allowing affirmative and uncritical opinions to be expressed but not negative or critical ones, appears to be classic viewpoint discrimination, even in its narrowest sense." Marjorie Heins, *Viewpoint Discrimination*,  24 Hastings Const. L.Q. 99, 118-19 (Fall 1996).

---

[5] The Ninth Circuit Court of Appeals has explained this part of *Boos* as follows:
> From plaintiff's standpoint, the subject matter regulated by the statute was "speech concerning a foreign government" and the restriction improperly favored one side of the debate.  The Court rejected this argument by defining the subject matter of the regulation at a different level of generality: speech against foreign governments.  Because the statute excluded this entire category of speech without regard to any particular foreign government or criticism, a plurality of the Court concluded that the statute was viewpoint neutral.

*Faith Cntr. Church Evangelistic Ministries*, 480 F.3d 891, 912 (9th Cir. 2007), *abrogated on other grounds by Winter v. Nat'l resources Defense Council*, 555 U.S. 7 (2008).

The Fourth Circuit Court of Appeals has deemed "content-neutral" a county planning commission's policy against "personal attacks." *Steinburg v. Chesterfield County Planning Comm'n*, 527 F.3d 377, 387 (4th Cir. 2008); *but cf. Timmon v. Wood*, 316 Fed. Appx. 364, 365 (6th Cir. 2007) (questioning whether city council's personal attacks policy is content neutral as found by district court). A sister court within this Circuit has held a city council's rule against personal attacks to be a content neutral restriction on speech. *Scroggins v. City of Topeka*, 2 F. Supp. 2d 1362, 1371 (D. Kan. 1998). And in *Anderson v. City of Bloomington*, 2012 WL 2034174 *3 (S.D. Ind. 2012), the court rejected a First Amendment challenge to a city council's rules of decorum, which among other things required speakers to "refrain" from "personal attacks," concluding that the rules were viewpoint neutral, regulating conduct, not views.

The Supreme Court has used viewpoint neutrality interchangeably with the phrase "[are] not an effort to suppress expression merely because public officials oppose the speaker's view." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 485 U.S. 788, 800 (1985) (quotation marks omitted). The statute at issue in *Boos* arguably satisfied this definition of viewpoint neutrality because it banned all criticism of foreign governments, regardless of the identity of a particular country (ally or foe) or a particular policy (favored by Congress or disfavored). Here, as in *Boos*, the Board's policy is content-based because it distinguishes between critical and favorable speech, restricting only critical speech. But the Board's policy is distinguishable from the statute at issue in *Boos* in a critical respect: Congress restricted critical speech aimed entirely at third parties; the Board's policy expressly restricts critical speech aimed at the individual

12

Case 1:12-cv-01137-MCA-SCY   Document 146   Filed 04/06/15   Page 13 of 17

members of the Board. The Board's express designation of its members for protection from personal attacks gives the members of the Board a personal interest in suppressing critical speech. The Court is inclined to confine the *Boos* plurality's conclusion about viewpoint neutrality to the context of the statute at issue in that case and to follow Judge Browning's compelling reasoning: the Board's policy is viewpoint-based because it "permits praise and neutral feedback, but not criticism of both government employees and worse, [the Board] itself." *Griffin*, 30 F. Supp. 2d at 1173.

As a viewpoint-based restriction, the Board's personal attacks policy is subject to the most stringent First Amendment scrutiny. *Church on the Rock v. City of Albuquerque*, 84 F.3d 1273, 1280 (10th Cir. 1996) (noting that viewpoint based restrictions are "presumed impermissible when directed at speech otherwise within the forum's limitations"). At a minimum the Board's policy "must be 'narrowly drawn to effectuate a compelling state interest.'" As with the prohibition on comments on personnel matters, Defendants assert that the Board's policy prohibiting personal attacks is necessary to confine comments to matters within the Board's purview, to prevent disruptive conduct or speech, to maintain decorum, and to assure that Board meetings are conducted in an orderly fashion.

In contrast to the personnel issues policy, there does not appear to be a statutory basis for restricting personal attacks, except to the extent that a personal attack might overlap a personnel issue. The Court concludes that § 22-5-14(B)(3) cannot justify the Board's personal attacks policy, which on its face extends to criticism of individuals who

13

are not APS personnel, including the individual members of the Board, who are elected officials.

The Board bears the burden of proof on justification. *Doe*, 667 F.3d 1131. *Doe* makes it clear that even in the context of a facial challenge this is a genuine evidentiary burden that is not satisfied by conjecture. *Doe*, 667 F.3d at 1131. The sole "personal attack" identified by the Board is Plaintiff's alleged personal attack on Board members and APS administrators at the November 4, 2009 Board meeting. However, no reasonable jury having viewed the video of the meeting could find under any plausible definition of personal attacks that Plaintiff personally attacked anyone during the November 4, 2009 meeting. Indeed, the video shows that Defendant Esquivel, who was presiding over the meeting, did not even mention a personal attacks policy in the course of ejecting Plaintiff. The Board has not come forward with evidence that would permit a reasonable jury to find that personal attacks present a threat to the orderly conduct of the Board's business or that its personal attacks policy is actually necessary to insure the orderly conduct of the Board's business. "When the Government defends a regulation on speech as a means to redress past harms or prevent anticipated harms, it must do more than simply 'posit the existence of the disease sought to be cured.' It must demonstrate that the recited harms are real, not merely conjectural . . . ." *Turner Broadcasting System, Inc. v. Federal Commc'n Comm'n*, 512 U.S. 622, 664 (1994). On the record before the Court the interests asserted by the Board as support for its personal attacks policy are purely conjectural. Accordingly, Defendants have failed to meet their burden

14

of production and summary judgment must be entered in Plaintiff's favor as to his facial challenge to the Board's personal attacks policy.

Plaintiff also seeks a declaration that the personal attacks policy was applied to him unconstitutionally. Defendant Esquivel is the individual who invoked the personal attacks policy in his November 5, 2009 letter. He is sued solely in his individual capacity. "Courts have concluded that 'there is no basis for suing a government official for declaratory and injunctive relief in his or her individual or personal capacity." *BEG Investments*, 2014 WL1280261 * 7. Further, "[a] declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." *Lawrence v. Kuenhold*, 271 Fed. Appx. 763, 766 (10th Cir. 2008). Plaintiff's motion is denied as to Plaintiff's request that the Court declare the Board's personal attacks policy unconstitutional as applied to Plaintiff.

The Board's "personal attacks" policy is declared on its face to violate of the First Amendment. The Board is permanently enjoined from further enforcement of its personal attacks policy.

**Issues Nos. 3-5**

Issues numbers 3, 4, and 5 each addresses a claim against an individual Defendant based upon the Defendant's past conduct. Each Defendant is sued solely in his individual capacity. In his motion, Plaintiff requests that the Court declare the Defendant's past conduct to have been unconstitutional. This is an improper use of declaratory relief. *See Lawrence*, 271 Fed. Appx. at 766.

The Court will deny Plaintiff's motion as to issues 3, 4 and 5.

**Issue No. 6**

This issue is addressed to Defendants Esquivel, Tellez, and Brooks, who are sued in their individual capacities, and is based upon Defendants' involvement in issuing and enforcing the September 1, 2010 "banning letter." Plaintiff seeks declaratory and injunctive relief against these Defendants.[6] "Courts have concluded that 'there is no basis for suing a government official for declaratory and injunctive relief in his or her individual or personal capacity." *BEG Investments*, 2014 WL 1280261 * 7. "Just as a plaintiff cannot sue a defendant in his official capacity for damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.*, his official capacity." *Cmty. Mental Health Serv. of Belmont v. Mental Health and Recovery Bd. Serving Belmont, Harrison & Monroe Counties*, 150 Appx. 389, 401(6th Cir. 2005).

The Court will deny summary judgment as to this issue.

**WHEREFORE, IT HEREBY IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc. 82] is **granted in part and denied in part**.

**IT IS FURTHER ORDERED AND DECLARED** that, on its face, the "personal attacks" policy of Defendant Albuquerque Public Schools Board of Education violates the First Amendment as applied to the States through the Fourteenth Amendment.

---

[6]Under established precedent, the Board ''may not be held liable under [42 U.S.C.] § 1983 solely because its employees inflicted injury on the plaintiff.'" *Cacioppov v. Town of Vail*, 528 Fed. Appx. 929, 931 (10th Cir. 2013) quoting *Bryson v. City of Okla.City*, 727 F.3d 784, 788 (10th Cir. 2010).

**IT IS FURTHER ORDERED** that Defendant Albuquerque Public Schools Board of Education is **permanently enjoined** from enforcing its "personal attacks" policy.

**So ordered this 6th day of April, 2015.**

                                                  _____
                                                  M. CHRISTINA ARMIJO
                                                  Chief United States District Judge